**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| KIMBERLY CARR, on behalf of herself and others similarly situated, | Case No. 2:25-cv-10985-LJM-CI |
| Plaintiff, | Hon. Laurie J. Michelson |
| | Mag. Curtis Ivy, Jr. |
| v. | |
| CREDIT ACCEPTANCE CORPORATION, | |
| Defendant. | |

## DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CERTAIN IMPROPER ALLEGATIONS FROM PLAINTIFF'S COMPLAINT

Defendant Credit Acceptance Corporation ("Credit Acceptance") hereby respectfully moves to dismiss the Complaint (*see* ECF No. 1) filed by Plaintiff Kimberly Carr ("Plaintiff") in this matter, in its entirety, for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Credit Acceptance respectfully moves to strike Plaintiff's facially uncertifiable proposed class definition and all other class-related allegations in the Complaint under Fed. R. Civ. P. 12(f) and 23, as identified below. The bases for this Motion are more fully set forth in the attached Brief in Support, which is incorporated herein by reference as if fully stated.

Pursuant to Section III of the Court's Case Management Requirements, a "Brief Format Certification Form" is appended hereto. Pursuant to Local Rule 7.1, the undersigned certifies that counsel for Credit Acceptance made reasonable and timely

efforts to confer with counsel for Plaintiff regarding the bases for this Motion and whether Plaintiff would concur with the relief sought herein prior to filing same, including an email sent on May 7, 2025. Plaintiff's counsel responded in writing the same day, indicating that Plaintiff does not concur and thus opposes this Motion.

Dated: May 14, 2025                    Respectfully submitted,


By: /s/ A. Paul Heeringa
_____

**MANATT, PHELPS & PHILLIPS, LLP**
John W. McGuinness*
A. Paul Heeringa*
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
(312) 529-6300
Email: jmcguinness@manatt.com
        pheeringa@manatt.com

**KING & ASSOCIATES, PLLC**
Stephen W. King**
355 S. Old Woodward Ave., Ste. 100
Birmingham, MI 48009
(248) 792-2398
sking@swkinglaw.com

***Counsel for Defendant***


*Permanently admitted to E.D. Mich. Bar*
*\*\* Local Counsel*

2

## ISSUES PRESENTED

1. Whether Plaintiff has adequately pled a claim for relief against Credit Acceptance under Fed. R. Civ. P. 12(b)(6). Credit Acceptance answers: "No."

2. Whether Plaintiff's class allegations should be stricken from the Complaint under Fed. R Civ. P. 12(f) and/or 23. Credit Acceptance answers: "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *Aikens v. Synchrony Fin.*, 2015 WL 5818911 (E.D. Mich. July 31, 2015)

- *Baisden v. Credit Adjusts., Inc*., 813 F.3d 338 (6th Cir. 2016)

- *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015)

- *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645 (M.D. Tenn. May 14, 2021)

- *Dobronski v. Russo*, 2024 WL 4363118 (E.D. Mich. Sept. 30, 2024)

- *Dobronski v. Tobias & Assocs., Inc*., 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024)

- *Eldridge v. Cabela's Inc.*, 2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)

- *Hill v. Homeward Residential, Inc.,* 799 F.3d 544 (6th Cir. 2015)

- *Lucas v. Telemarketer Calling from (407) 476-5680*, 2019 WL 3021233 (6th Cir. May 29, 2019)

- *Murray v. Choice Energy, LLC*, 2015 WL 4204398 (S.D. Ohio July 10, 2015)

- *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)

- *Randleman v. Fid. Nat'l Title Ins. Co.,* 646 F.3d 347 (6th Cir. 2011)

- *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017)

- *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076 (S.D. Ohio May 7, 2014)

## TABLE OF CONTENTS FOR BRIEF IN SUPPORT OF MOTION

**Page**

BRIEF IN SUPPORT OF MOTION (INTRODUCTION) ......................................1

RELEVANT ALLEGATIONS .................................................................5

APPLICABLE LEGAL STANDARDS ........................................................6

ARGUMENT .........................................................................................7

I. Plaintiff's Entire Complaint Should Be Dismissed Under Rule 12(b)(6). .......7

    A. Plaintiff Fails to Sufficiently Allege a Theory of TCPA Liability. .......7

    B. Plaintiff Fails to Plead Facts Showing the Call was "Prerecorded." .....................................................................16

II. Alternatively, Plaintiff's Class Allegations Are Facially Uncertifiable and, Therefore, They Should Be Stricken Pursuant To Rules 12(F) and/or 23. ..................................................................................20

CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ................................................8, 14

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018)..........................................................8

*Aikens v. Synchrony Fin.*,
2015 WL 5818911 (E.D. Mich. July 31, 2015)..................................................16

*Allison v. Wells Fargo Bank, N.A.*,
2022 WL 10756885 (S.D. Cal. Oct. 18, 2022)............................................16, 18

*Andersen v. Nexa Mortg., LLC*,
2024 WL 3762098 (C.D. Cal. Aug. 12, 2024) ...........................................passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................6

*Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*,
459 U.S. 519 (1983)..........................................................................................19

*Babare v. Sigue Corp.*,
2020 WL 8617424 (W.D. Wash. Sep. 30, 2020).................................................2

*Baisden v. Credit Adjusts., Inc.*,
813 F.3d 338 (6th Cir. 2016) ............................................................................23

*Bank v. Alleviate Tax, LLC*,
2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024)............................................13, 14

*Bank v. Vivint Solar, Inc.*,
2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*,
2019 WL 1306064 (Mar. 22, 2019)...................................................................14

*Barnes v. SunPower Corp.*,
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ............................................10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................6

*Belleville v. Florida Insur. Services, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024), *report and rec. adopted in
part,* 2024 WL 2794108 (May 31, 2024) ........................................................11

# TABLE OF AUTHORITIES
(continued)

**Page**

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022) ......................................................12

*Blount v. D. Canale Beverages, Inc.*,
2003 WL 22890339 (W.D. Tenn. July 23, 2003)..............................................25

*Boyer v. Diversified Consultants, Inc.*,
306 F.R.D. 536 (E.D. Mich. 2015) ..............................................................24, 25

*Brown v. Nano Hearing Tech OPCP, LLC*,
2024 WL 3367536 (S.D. Cal. July 9, 2024) .....................................................11

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) .....................................................9

*Callier v. SunPath Ltd.*,
2020 WL 10285659 (W.D. Tex. Aug. 10, 2020)...............................................15

*Cunningham v. Daybreak Solar Power, LLC*,
2023 WL 3985245 (N.D. Tex. June 13, 2023) .......................................9, 15, 16

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
2021 WL 1946645 (M.D. Tenn. May 14, 2021) .........................................10, 16

*Curry v. Synchrony Bank, N.A.*,
2015 WL 7015311 (S.D. Miss. Nov. 12, 2015)................................................16

*Davis v. Rockloans Marketplace, LLC*,
2024 WL 4896587 (S.D. Cal. Nov. 26, 2024)...................................................20

*Dobronski v. Russo*,
2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ........................................3, 4, 9

*Dobronski v. Tobias & Assocs., Inc.*,
2024 WL 1174553 (E.D. Mich. Mar. 18, 2024)................................................16

*Dolemba v. Kelly Servs., Inc.*,
2017 WL 429572 (N.D. Ill. Jan. 31, 2017)......................................................23

*Eidson v. Tenn. Dep't of Child. Servs.*,
510 F.3d 631 (6th Cir. 2007) ..............................................................................7

*Eldridge v. Cabela's Inc.*,
2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)............................................20, 22

*Flores v. City of Cal. City*,
2019 WL 1934016 (E.D. Cal. May 1, 2019) ....................................................25

# TABLE OF AUTHORITIES
(continued)

**Page**

*Garvey v. Citizens for Rauner, Inc.*,
  2020 WL 13512715 (N.D. Ill. Sept. 3, 2020) ....................................................12

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)............................................................................................20

*Gene and Gene LLC v. BioPay LLC*,
  541 F.3d 318 (5th Cir. 2008) .............................................................................23

*Gorss Motels, Inc. v. Safemark Sys., LP*,
  931 F.3d 1094 (11th Cir. 2019) .........................................................................23

*Hicks v. Alarm.com Inc.*,
  2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ......................................................19

*Hill v. Homeward Residential, Inc.*,
  799 F.3d 544 (6th Cir. 2015) .............................................................................23

*In re Joint Petition*
  *filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013) .....................................8

*In re Rules & Regs. Implementing the TCPA*,
  30 FCC Rcd. 7961 (2015)..................................................................................2, 9

*Jones v. City of Cincinnati*,
  521 F.3d 555 (6th Cir. 2008) ...............................................................................7

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
  2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ..........................................22, 24, 25

*Loreto v. Procter & Gamble Co.*,
  2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ..................................................20

*Lucas v. Telemarketer Calling from (407) 476-5680*,
  2019 WL 3021233 (6th Cir. May 29, 2019)....................................................8, 10

*Maldonado-Rodriguez v. Citibank, N.A.*,
  2013 WL 350814 (N.D. Ind. Jan. 28, 2013) ......................................................15

*Matthews v. Senior Life Ins.*
  2025 WL 1181789 (E.D. Va. Apr. 22, 2025) ......................................................14

*Meeks v. Buffalo Wild Wings, Inc.*,
  2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) .........................................9, 11, 15

*Metzler v. Pure Energy USA LLC*,
  2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ............................................4, 10, 18

# TABLE OF AUTHORITIES
(continued)

**Page**

*Murray v. Choice Energy, LLC*,
2015 WL 4204398 (S.D. Ohio July 10, 2015)............................................10, 11

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ...................................................3, 8

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
650 F.3d 1046 (6th Cir. 2011) ...............................................................................7

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) .....................................................8

*Pepka v. Kohl's Dep't Stores, Inc.*,
2016 WL 8919460 (C.D. Cal. Dec. 21, 2016)............................................22, 25

*Pietzak v. Microsoft Corp.*,
2015 WL 7888408 (C.D. Cal. Nov. 17, 2015) ...................................................23

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) ..............................................................................20

*Rahimian v. Adriano*,
2022 WL 798371 (D. Nev. Mar. 16, 2022) .......................................................20

*Randleman v. Fid. Nat'l Title Ins. Co.*,
646 F.3d 347 (6th Cir. 2011) ..............................................................................24

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023)............................10, 14, 15, 19

*Rogers v. Postmates Inc.*,
2020 WL 3869191 (N.D. Cal. July 9, 2020) .......................................................7

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017) ..............................................................................21

*Saunders v. NCO Fin. Sys.*,
910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012) ........................................................2

*Sauter v. CVS Pharmacy, Inc.*,
2014 WL 1814076 (S.D. Ohio May 7, 2014).......................................20, 24, 25

*Scruggs v. CHW Grp., Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020) ...................................................14

*Sherrod v. Enigma Software Grp. USA, LLC*,
2016 WL 25979 (S.D. Ohio Jan. 4, 2016).........................................................21

# TABLE OF AUTHORITIES
(continued)

**Page**

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020)...............................................3, 8

*Sliwa v. Bright House Networks, LLC*,
333 F.R.D. 255 (M.D. Fla. 2019) .......................................................22

*Smith v. Direct Building Supplies, LLC*,
2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) .......................................14

*Smith v. Pro Custom Solar LLC*,
2021 WL 141336 (D.N.J. Jan. 15, 2021)...........................................16

*Soundboard Ass'n v. FTC*,
888 F.3d 1261 (D.C. Cir. 2018)..........................................................17

*Tam Travel, Inc. v. Delta Airlines, Inc.*,
583 F.3d 896 (6th Cir. 2009) .................................................................7

*Thomas v. Taco Bell Corp.*,
582 F.App'x 678 (9th Cir. 2014) ..........................................................7

*Trenz v. On-Line Admins., Inc.*,
2020 WL 5823565 (C.D. Cal. Aug. 10, 2020) ..................................22

*Tuso v Lennar Corp.*,
2024 WL 1239474 (S.D. Fla. Mar. 22, 2024) .....................................8

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011).........................................................................21

*Wallack v. Mercantile Adjustments Bureau, Inc.*,
2014 WL 1515852 (E.D. Mich. Apr. 18, 2014) ...................................9

*Woodard v. Health Ins. All.*,
2024 WL 942629 (N.D. Ill. Mar. 5, 2024) ........................................10

*Yagman v. Allianz Ins.*,
2015 WL 5553460 (C.D. Cal. May 11, 2015)....................................21

## STATUTES

47 U.S.C. § 227 et seq...........................................................................1, 7

47 U.S.C. § 227(b) ........................................................................7, 17, 23

47 U.S.C. § 227(b)(1)(A)(iii)..........................................................1, 7, 17

47 U.S.C. § 227(b)(3)...................................................................................1

## TABLE OF AUTHORITIES
(continued)

**Page**

### OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(1) .................................................................................1, 7, 23

https://www.merriam-webster.com/dictionary/voicemail (last visited May
    14, 2025) .........................................................................................................17

### RULES

Fed. R. Civ. P. 12(b)(6) ........................................................................passim

Fed. R. Civ. P. 12(f) ............................................................................passim

Fed. R. Civ. P. 23 ....................................................................20, 21, 23, 24

Fed. R. Civ. P. 23(b)(3) .............................................................................21

Fed. R. Civ. P. 23(c)(1)(A) ........................................................................20

## <u>BRIEF IN SUPPORT OF MOTION (INTRODUCTION)</u>

In her putative class action Complaint, Plaintiff alleges, in conclusory fashion, that Credit Acceptance violated certain provisions of the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1). Her claim rests squarely on one allegedly "prerecorded voice message"—stemming from a call she apparently did not answer (or at least she does not plead she did)—"delivered" to her cell number without her consent. In other words, she brings a TCPA claim here, seeking nationwide class treatment, based solely on threadbare allegations about a ***single voicemail message***. As demonstrated below however, Plaintiff fails to plead, in accordance with federal pleading standards, sufficient non-conclusory facts supporting an inference that Credit Acceptance bears any legal liability for that call, let alone that it violated the TCPA in the first instance.

That federal district courts across the country have uniformly required plaintiffs to provide more than just barebones conclusions to overcome a dispositive motion at the pleadings stage in TCPA cases is for good reason. As the Court is aware, the TCPA has become one of the most heavily litigated statutes in the United States since its enactment in 1991. Given the relief the TCPA affords, this is unsurprising: $500 in statutory damages per call, which can be trebled to $1,500 for "willful" or "knowing" violations. *See* 47 U.S.C. § 227(b)(3). As such, even the Federal Communications Commission ("FCC"), the agency responsible for issuing the TCPA's implementing

-1-

regulations, has commented that the TCPA "has strayed far from its original purpose" of protecting consumers from unscrupulous telemarketers, spawned a national cottage industry of class action litigation, and has become "the poster child for lawsuit abuse" by profit-seeking plaintiffs. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). And while attorneys' fees are not available under the statute, even beneficial "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" to seek a windfall of potentially ruinous damages and exorbitant legal fees from otherwise innocent defendants through costly class action litigation. *Saunders v. NCO Fin. Sys.*, Inc. 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012). *See also Babare v. Sigue Corp.*, 2020 WL 8617424 at *2 (W.D. Wash. Sep. 30, 2020) ("It is well-recognized that discovery in [TCPA] class actions is expensive and asymmetric, with defendants bearing most of the burdens.").

It is against this backdrop that federal district courts have tacitly recognized that, at the pleadings stage in TCPA cases and particularly in putative class actions, they must balance the important goal of protecting consumers from unwanted calls against the equally important goal of protecting defendants from abusive litigation. Put differently, despite the intended remedial purpose of the underlying statute, TCPA plaintiffs—like ***all*** other federal plaintiffs—do not get a free pass to discovery and must still plead sufficient facts supporting the essential elements of their claims. Thus, TCPA complaints like the one at bar, built on a weak foundation of barren conclusions

lacking in requisite factual support, are routinely dismissed by courts at the pleadings stage for not meeting federal pleading standards. Plaintiff's similarly-defective Complaint in this case should suffer the same fate for at least the following reasons:

**First**, as a threshold matter, it is well-settled in the Sixth Circuit and nationally that all TCPA plaintiffs must first plead adequate facts supporting a viable theory of liability under the TCPA (*i.e.*, direct or vicarious liability) against the defendant, and that failure to do so warrants dismissal of <u>any</u> TCPA claim in its entirety under Rule 12(b)(6). *See, e.g., Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing on these bases). *See also Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA [and an equivalent state statute]—that Defendants were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other [essential] elements" of the claims asserted.). This established rule mandates that plaintiffs plead sufficient non-conclusory facts supporting an inference that the defendant: (i) itself, not a third party, "physically" placed each of the subject calls directly to the plaintiff, as required for direct TCPA liability; or (ii) was in a common law agency relationship with a third party that did physically place the subject calls, as required for vicarious TCPA liability. *See Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (discussing the differences between direct

and vicarious TCPA liability and the accepted legal standards for pleading same).

In this case, aside from a few bald conclusions which are not entitled to any presumption of truth at the pleadings stage, Plaintiff's Complaint lacks such requisite facts, as demonstrated below. This defect alone warrants a total dismissal. *See, e.g., Dobronski,* 2024 WL 4363118, at *5 (plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead a theory of TCPA liability).

**Second**, Plaintiff's TCPA claim should also be dismissed under Rule 12(b)(6) because she fails to adequately plead that the subject call involved use of an "artificial or prerecorded voice," as opposed to a live person speaking, which is another essential element for her claim. While federal courts do not expect a plaintiff to know the exact technical specifications of a call at the pleadings stage of course, they have consistently held that TCPA plaintiffs must plead actual facts and provide sufficient contextual details about the subject calls (not just naked conclusions) supporting an inference that such "voice" technology was actually used, or face dismissal. *See, e.g., Andersen v. Nexa Mortg., LLC,* 2024 WL 3762098, at *4 (C.D. Cal. Aug. 12, 2024).

Here, Plaintiff's Complaint is chocked full of conclusory statements and regurgitations of the statute and applicable case law, all in an attempt to suggest that the single "message" at issue was "prerecorded," which is insufficient to withstand a Rule 12(b)(6) motion. *See, e.g., Metzler v. Pure Energy USA LLC,* 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing similar claim where the plaintiff alleged

-4-

receipt of one "prerecorded" voicemail but no other factual details).

Alternatively, if the Complaint somehow manages to survive dismissal despite the well-supported dispositive grounds outlined above, the class allegations within are also facially inadequate, such that class certification cannot be granted as pled. Thus, the Court should strike those clearly improper allegations now under Rules 12(f) and/or 23 in any event, before the parties waste effort in discovery relating to them.

## RELEVANT ALLEGATIONS

In pertinent part, Plaintiff alleges—or, rather, concludes—she received "at least one call" in "March of 2025" that "delivered a prerecorded voice message" to her cell number. ECF No. 1, ¶¶ 12-17, PageID.2-3. Though she oscillates between using the singular term "call" and the plural term "calls," Plaintiff's Complaint only refers to <u>one</u> call, purportedly received "on or about March 4, 2025." *Id*. ¶ 17, PageID.3.[1] The complained-of "message" supposedly "delivered" by this call stated, at least in part, "Please call Credit Acceptance at 1-800-634-1506 or you can visit us online at www.creditacceptance.com to make a payment...." *Id*. (alteration in original). Based solely on the partial content of this one message, Plaintiff equivocates and concludes throughout her Complaint, all without factual support, that "Defendant placed," "directed" "delivered," and/or "caused to be placed" this call. *See, e.g., id.* ¶¶ 14-18,

---

[1] Indicative of its many defects, the Complaint also frequently changes Plaintiff's gender, using male and female pronouns. *See, e.g., id.* ¶¶ 12, 26, 27, PageID.2-3.

22-25, 29, 36, PageID.3-5. In other words, according to her own allegations, Plaintiff apparently contends <u>either</u> that (i) Credit Acceptance ***itself*** "placed" or "delivered" the subject phone call, <u>and/or</u> (ii) it "directed" or "caused" a ***third party*** to do so. *Id*.

Plaintiff also offers a variety of conclusory statements, parroting the statute or applicable case law, to suggest this one message involved an "artificial or prerecorded voice" in purported violation of the TCPA. *See, e.g., id.* ¶¶ 2, 3, 6, 11, 16-19, 22, 25, 27-29, 36, 48, 59, PageID.1-7. However, she does not specify which technology she contends was used, let alone indicate if she answered the call or if her phone rang.

## APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) mandates dismissal of a complaint that fails to state a claim for relief. To avoid a dismissal, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 570 (a plaintiff must allege facts that nudge their claims across the line from merely "conceivable" to "plausible"). Further, while this Court must generally accept well-pled factual allegations as true under this

-6-

Rule, it need <u>not</u> do so for legal conclusions couched as fact, unreasonable inferences, or unsupported speculation. *See, e.g., New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1050 (6th Cir. 2011); *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *Eidson v. Tenn. Dep't of Child. Servs.,* 510 F.3d 631, 634 (6th Cir. 2007).

## <u>ARGUMENT</u>

### I.   <u>Plaintiff's Entire Complaint Should Be Dismissed Under Rule 12(b)(6).</u>

Plaintiff's Complaint seeks relief under Section 227(b) of the TCPA. *See* ECF No. 1, ¶¶ 59-60, PageID.7. That provision provides, *inter alia*, that no person shall "make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) (related implementing regulations). As demonstrated below, Plaintiff's Complaint fails to state such a claim.

### A.   **Plaintiff Fails to Sufficiently Allege a Theory of TCPA Liability.**

As a threshold matter, the entire Complaint should be dismissed under Rule 12(b)(6) because Plaintiff fails to plausibly allege a theory of liability under the TCPA.

There are two potential theories of liability under the TCPA: (i) direct liability; or (ii) vicarious liability. *See, e.g.*, *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679

-7-

(9th Cir. 2014)). This rule means the defendant "must either (1) directly make the call [at issue], or (2) have [a common law] agency relationship with the person who made the call [at issue]." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). A plaintiff's failure to plead these theories, with sufficient factual support, warrants dismissal of <u>any</u> TCPA claim under Rule 12(b)(6) regardless of whether the plaintiff also pled facts supporting other essential elements of their asserted claim(s). *See Nelums*, 2023 WL 5607594, at *9; *see also Tuso v Lennar Corp.*, 2024 WL 1239474, at *4 (S.D. Fla. Mar. 22, 2024) (dismissing on these bases, ruling similarly). In this instance, Plaintiff failed to allege either theory.

As to the former theory, it is well-settled that plausibly alleging a direct TCPA liability theory able to withstand dismissal under Rule 12(b)(6) requires pleading sufficient non-conclusory facts supporting an inference that the defendant itself "physically" placed the calls at issue directly to the plaintiff. *See, e.g., Lucas v. Telemarketer Calling from (407) 476-5680*, 2019 WL 3021233, at *5-6 (6th Cir. May 29, 2019); *Sheski*, 2020 WL 2474421, at *2-4 (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). *See also Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls"; and dismissing where the plaintiff "failed to plead facts

sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) ("[a]t the very minimum, plaintiff must allege … that defendant [physically] made each call that she seeks to hold it liable for"). Thus, "direct TCPA liability" means exactly what it sounds like—the defendant itself literally picked up the phone and ***physically*** "made" or "initiated" each alleged call ***directly*** to the plaintiff. [2] Per the FCC, a call made by a third party for the defendant is not the equivalent. *See* 30 FCC Rcd. at 7980 (there must be a "direct connection between a person or entity and the making of a call" for direct liability to attach).

At the same time, it is axiomatic that one cannot simply speculate their way into a viable direct TCPA liability claim in federal court. Rather, courts in this Circuit have correctly recognized that, in accordance with bedrock federal pleading standards, allegations of direct TCPA liability must be supported by much more than barebones conclusory statements that the defendant or someone acting on its behalf "made" or "initiated" the calls at issue to overcome a Rule 12(b)(6) motion. *See, e.g., Dobronski*,

---

[2] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, federal district courts evaluating and ultimately dismissing conclusory direct TCPA liability (like those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to literally "physically" place a phone call. *See also Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2-3 (N.D. Tex. June 13, 2023); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3-5 (N.D. Cal. Mar. 28, 2018); *Wallack v. Mercantile Adjustments Bureau, Inc.*, 2014 WL 1515852, at *3 (E.D. Mich. Apr. 18, 2014).

2024 WL 4363118, at *5 (dismissing, holding the plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plausibly plead any theory of TCPA liability); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645, at *2 (M.D. Tenn. May 14, 2021) (dismissing on this basis, applying *Lucas*); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing where there were "no factual allegations … that Choice Energy [itself] had any active role or involvement in [physically] placing the calls").

The foregoing decisions do not stand alone, are reflective of a majority analytical approach, and are consistent with how federal district courts across the country have historically evaluated the sufficiency of direct TCPA liability allegations under Rule 12(b)(6). *See, e.g., Metzler*, 2023 WL 1779631, at *6 (holding TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing where plaintiffs alleged one defendant "physically" placed the calls, noting "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing where plaintiffs did not plausibly allege the "[d]efendant itself" physically made the calls); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D.

Ill. Mar. 5, 2024) (dismissing on this basis, holding "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" under Rule 12(b)(6)). This Court should join them.

In fact, myriad courts in and beyond this Circuit have found that even a call allegedly offering the defendant's products, identifying the defendant by name, and/or originating "from" the defendant does <u>not</u>, without more, allow for a plausible inference that the defendant itself physically placed any call for direct TCPA liability purposes. *See*, *e.g.*, *Murray*, 2015 WL 4204398, at *2 (dismissing on this basis, even though the plaintiff was allegedly expressly informed that the subject call was "from" the defendant); *Meeks*, 2018 WL 1524067, at *1–5 (dismissing on this basis, even though at-issue text identified defendant by name and contained a link to its website); *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part,* 2024 WL 2794108 (May 31, 2024) (recommending and approving dismissal on this basis, even though one caller said they were calling "from" the defendant and provided the defendant's website on the call); *Barnes*, 2023 WL 2592371, at *1-3 (dismissing on this basis, even though one plaintiff spoke to someone "who identified herself as working for" the defendant); *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing where plaintiff concluded the caller's "numbers belonged to [the defendant] Nano or Nano's agent," without sufficient facts supporting an inference

-11-

defendant itself physically placed each call at issue to the plaintiff). Together, these well-reasoned authorities (among many others) show that the alleged content of a call is not dispositive of this issue alone, and that more factual enhancement is necessary.

This accepted approach to evaluating direct TCPA liability claims under Rule 12(b)(6) is in tacit recognition that companies often hire third parties to handle their outbound communications. *See, e.g., Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("a defendant 'generally does not [physically] initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf"). For example, a ringless "prerecorded" voicemail message— which is what Plaintiff seemingly alleges she received here, since she does not allege she answered or that her phone even rang—could be physically "delivered" by a third party vendor. Such a communication would naturally identify the defendant by name and would have originated "from" the defendant in a very technical sense. But it would not have been physically initiated by the defendant itself to the plaintiff directly, which is what matters for direct TCPA liability to attach as the many authorities cited above all show. Both logically and as matter of law, a third party hired to "deliver" an alleged "prerecorded" message, and a defendant having <u>indirect</u> involvement in that process, is not "direct" TCPA liability. Rather, that scenario implicates a different TCPA liability theory, with different pleading requirements. *Cf. Garvey v. Citizens for Rauner, Inc.,* 2020 WL 13512715, at *3 (N.D. Ill. Sept. 3, 2020)

-12-

(declining to dismiss on vicarious liability grounds where plaintiff pled defendant was in an agency relationship with the party delivered a "ringless voicemail" message).

Applying the foregoing firmly-rooted legal principles here dooms the entire Complaint to dismissal. At best, Plaintiff alleges she received one call which she apparently did not answer from an unspecified number that "delivered a prerecorded message"—which she only provides in part and that identified Credit Acceptance by name and its website. *See* ECF No. 1, ¶¶ 15-17, PageID.2-3. Even if the Court takes these few ill-pled allegations as true (and it should not), however, numerous courts have recognized the alleged content of a call, even if a defendant's name is mentioned or its products are sold, is not dispositive of direct TCPA liability standing alone. *See* discussion at pp. 11-12, *supra* (collecting cases). This Court should rule similarly here.

What remains in the Complaint for this Court to evaluate are many bald conclusions, each regurgitating the statutory text and other authority but lacking factual enhancement and stating "Defendant placed," "delivered," and/or "caused to be placed" an unspecified number of calls ("at least one") to Plaintiff. ECF No. 1, ¶¶ 14-18, 22-25, 29, 36, PageID.3-5. But "simply asserting a purported fact does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024).

Moreover, Plaintiff tellingly does <u>not</u> allege, *inter alia,* (i) what phone number was used to place the subject call; (ii) that Credit Acceptance owns or uses that phone

number, (iii) that she called that number back and reached Credit Acceptance directly; (iv) she spoke with anyone who identified themselves as a Credit Acceptance employee (in fact, she does not even indicate whether she answered the call); or (v) that Credit Acceptance's name appeared on her caller ID. Such facts (if pled) ***might*** have supported a direct TCPA liability theory here, as other courts have held. *See, e.g., Rogers v. Assurance IQ*, 2023 WL 2646468, at *5 (citing, *inter alia*, *Aaronson*); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Bank v. Vivint Solar, Inc*., 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (all dismissing where complaints lacked such supporting facts about the calls). Yet, as one court recently dismissing a TCPA claim on this basis aptly noted, "[a]s a party to these calls, Plaintiff 'should [easily] be able to provide greater detail'" to support her direct liability theory. *Matthews v. Senior Life Ins.* Co., 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (quoting *Scruggs v. CHW Grp., Inc*., 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)). The omission of such crucial detail here is fatal to Plaintiff's Complaint.

Perhaps worse, Plaintiff's class allegations reveal that Plaintiff does not know who physically "delivered" the "message" to her, and is merely taking a flawed "either/or" pleading approach, hoping to limp into discovery. *See, e.g.,* ECF No. 1, ¶ 29, PageID.4 (seeking to certify a class of "All persons throughout the United States … to whom [Credit Acceptance] ***placed, or caused to be placed, a call***….") (emphasis

-14-

added). In other words, what Plaintiff seemingly is really alleging here, at bottom, is that <u>either</u> Credit Acceptance <u>or</u> countless unidentified third parties are possibly at fault for the subject call, which federal courts have found to be "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at \*5 (N.D. Ind. Jan. 28, 2013) (emphasis added). That rings especially true when it comes to stating a plausible direct TCPA liability claim, where the identity of the actual caller is the threshold element and must be adequately pled in every case.

Lastly, though it includes conclusory allegations suggestive of third party involvement, Plaintiff's Complaint does not contain any actual facts supporting an inference that Credit Acceptance was in a common law agency relationship with any third party that called her. Nor does it allege that Credit Acceptance had any modicum of "control" over the "manner and means" of any third party caller's telemarketing campaign—which is the accepted touchstone of vicarious liability in a TCPA case and must also be adequately pled in every case—even in a conclusory fashion. *See, e.g., Meeks*, 2018 WL 1524067, at \*6; *Cunningham,* 2023 WL 3985245, at \*3; *Callier v. SunPath Ltd.,* 2020 WL 10285659, at \*3 (W.D. Tex. Aug. 10, 2020); *Rogers,* 2023 WL 2646468, at \*6 (all dismissing where complaints lack such facts).[3] Therefore, Plaintiff has not pled a vicarious TCPA liability theory, which further warrants

---

[3] However, like for direct liability, such "control" for vicarious liability may not be inferred based solely on the content of the allegedly violative communications, either. *See, e.g., Meeks,* 2018 WL 1524067, at \*6 (dismissing on vicarious liability grounds despite hyperlink to defendant's app within the subject text messages).

-15-

dismissal. *See, e.g., Cunningham,* 2021 WL 1946645, at *4 (dismissing on this basis, holding a TCPA plaintiff "must allege some factual predicate that gives rise to an inference of an agency relationship"); *Dobronski v. Tobias & Assocs., Inc*., 2024 WL 1174553, at *3 (E.D. Mich. Mar. 18, 2024) (citing *Cunningham,* ruling similarly).

**B.     Plaintiff Fails to Plead Facts Showing the Call was "Prerecorded."**

Plaintiff also failed to adequately allege receipt of an "artificial or prerecorded voice" message. To survive dismissal on this basis, the "[C]omplaint must include some factual allegations beyond 'the call had a prerecorded [or artificial] voice.'" *Smith v. Pro Custom Solar LLC*, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021).

Consistent with federal pleading standards, therefore, Plaintiff cannot simply parrot the statutory text or applicable case law in this regard, and "must include factual allegations indicating that a prerecorded voice, as opposed to that of a real, live person, was used." *Andersen*, 2024 WL 3762098, at *4; *see also Curry v. Synchrony Bank, N.A.,* 2015 WL 7015311, at *2-3 (S.D. Miss. Nov. 12, 2015) (dismissing where plaintiff had "'not provided sufficient contextual details to determine whether she spoke to a human or merely heard a recording upon picking up the phone'") (quoting *Aikens v. Synchrony Fin.,* 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015)); *Allison v. Wells Fargo Bank, N.A.,* 2022 WL 10756885, at *3 (S.D. Cal. Oct. 18, 2022) (dismissing and rejecting argument that "the use of a 'prerecorded voice' is [a] self-defining" term). These authorities, among many others, show that a plaintiff bringing

such a TCPA claim must provide sufficient facts and contextual details from which it can be inferred that such "voice" technology was actually used, or face dismissal.

Such contextual details are critically important in cases where, as here, the plaintiff allegedly received a voicemail and did not answer the preceding call. That is because a voicemail, by definition, "is an electronic communication system in which ***spoken messages are recorded or digitized and stored for later playback*** by the intended recipient." *See* https://www.merriam-webster.com/dictionary/voicemail (last visited May 14, 2025) (emphasis added). Yet, a voicemail message left by a live person in real time does not violate Section 227(b) of the TCPA. *See Andersen*, *supra*.

As applied here, Plaintiff's Complaint is replete with conclusory statements and regurgitations of applicable case law asserting that the "voice" on the subject message was "artificial or prerecorded" in purported violation of Section 227(b) of the TCPA. *See, e.g.,* ECF No. 1, ¶¶ 2, 3, 6, 11, 16-19, 22, 25, 27-29, 36, 48, 59, PageID.1-7. Though Plaintiff's failure to distinguish between these two technologies in her pleading is problematic in its own right—particularly as the terms "artificial" and "prerecorded" are not synonymous under the TCPA and involve different forms of technology[4]—her threadbare allegations on this point are plainly insufficient to

---

[4] *See* 47 U.S.C. §227(b)(1)(A)(iii) (restricting calls made using an "artificial or prerecorded voice"). An "artificial" voice is the voice of a person that does not exist (*e.g.,* artificial intelligence or a "soundboard") used to interact with the called party. *See also Soundboard Ass'n v. FTC,* 888 F.3d 1261, 1263 (D.C. Cir. 2018) (discussing some common forms of artificial voice technology). A "prerecorded" voice is far less advanced and is a live person making an audio recording (there is no interaction).

plausibly state such a claim at this stage. *See, e.g., Allison* and *Andersen*, *supra*.

Nevertheless, even if the Court takes Plaintiff's wholly conclusory allegations here as true (and, again, it should not), they do not save her from dismissal. At best, Plaintiff uses some buzzwords from case law and refers to the message as "generic" and the voice in it as sounding "robotic" (ECF No. 1, ¶ 9, PageID.3), but she does not provide any contextual details. For example, Plaintiff does not indicate whether she answered the call and interacted with the caller, such that she could have determined whether it was truly a prerecorded voice or someone reading a script—*e.g.,* the caller failed to alter their tone of voice in interacting with her or was non-responsive to her questions. This omission is telling because, in a live telephone interaction as opposed to a voicemail, it might be possible to discern whether the caller was live or a "robotic" device, since no actual conversation can occur in the latter. *See, e.g., Metzler,* 2023 WL 1779631, at *1, 6 (dismissing similar claim based on one voicemail, where the content of "[t]he voicemail itself [as alleged] provide[d] no indication that it was prerecorded as opposed to having been left by a caller reading from a script").

A "robotic" sounding voice might be an *artificial* voice in some instances, which again is a different form of technology than a *prerecorded* voice. Yet, Plaintiff seemingly alleges the message was only "prerecorded." *See* ECF No. 1, ¶¶ 17 and 19, PageID.2. This inconsistency further underscores the many facial deficiencies in the Complaint. Plaintiff also does not provide details about the message's "pattern or

tone of speech" or "content" (ECF No. 1, ¶ 18-19, PageID.3) supporting her conclusions it was "prerecorded." In sum, such details matter in prerecorded call cases, as the authorities above show; their absence here warrants dismissal. *See, e.g., Rogers*, 2023 WL 2646468, at *4 ("[e]ven at this pre-discovery stage, Plaintiffs should be able to allege facts establishing that the calls were in-fact pre-recorded" and such "information is known to Plaintiffs without any discovery"); *Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983) ("It is not ... proper to assume that [the plaintiff] can prove facts that [s]he has not alleged[.]").

That the one message was supposedly "generic" does not support an inference it was prerecorded, as opposed to a live person reading from a script, either. *See, e.g., Hicks v. Alarm.com Inc.,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (finding conclusory allegations about a supposed "generic" voicemail message insufficient to support an inference that it was prerecorded, without more). Indeed, any person reading a script and leaving a routine voicemail message might leave a "generic" or "robotic" sounding message, which is the whole point of using a script—uniformity. But she does not allege that she received the same message twice, or that others did.

All told, Plaintiff's Complaint lacks necessary contextual "factual allegations indicating that a prerecorded voice, as opposed to that of a real, live person, was used" here. *Andersen*, 2024 WL 3762098, at *4. "[T]his kind of information should be available to plaintiffs bringing TCPA claims" and it must be well-pled to support such

a claim. *Davis v. Rockloans Marketplace, LLC*, 2024 WL 4896587, at *2 (S.D. Cal. Nov. 26, 2024) (dismissing). "Without further specifics, Plaintiff's allegation [that the message was prerecorded] is conclusory" and cannot overcome dismissal under Rule 12(b)(6). *Rahimian v. Adriano*, 2022 WL 798371, at *2-3 (D. Nev. Mar. 16, 2022).

## II.   Alternatively, Plaintiff's Class Allegations Are Facially Uncertifiable and, Therefore, They Should Be Stricken Pursuant to Rules 12(f) and/or 23.

It is well settled that "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action and, thus, that a court may properly resolve class certification at the pleadings stage on a defendant's motion to strike before the plaintiff has moved to certify. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). Further, "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time." *Pilgrim*, 660 F.3d at 949 (affirming district court order striking class allegations at the pleading stage).

In accord with the foregoing binding authority, courts in this Circuit have widely recognized class allegations may be stricken at the pleadings stage before discovery under Rule 12(f) where, as here, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met" under Rule 23. *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (quoting *Loreto v. Procter & Gamble Co.*, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013)) (striking class definition in TCPA case at the pleadings stage); *see also Eldridge v.*

-20-

*Cabela's Inc.*, 2017 WL 4364205, at *10 (W.D. Ky. Sept. 29, 2017) (same).

Moreover, though Credit Acceptance acknowledges that Rule 12(f) motions to strike may be generally disfavored, courts have also recognized that permitting a facially uncertifiable class to proceed to discovery would place an undue burden and expense upon the parties and the court alike. *See, e.g., Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015). This Court should rule similarly.

As applied here, it is readily apparent from the face of the Complaint that Plaintiff cannot meet the requirements for class certification under Rule 23. For starters, Rule 23(b)(3) requires that "questions of law or fact common to class members must predominate over any questions affecting only individual members[.]" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *as corrected* (Sept. 1, 2017). "A common issue of fact or law does not exist unless 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sherrod v. Enigma Software Grp. USA, LLC*, 2016 WL 25979, at *6 (S.D. Ohio Jan. 4, 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Applying this rule, courts have consistently denied class certification in TCPA cases where individualized factual and legal inquiries on the critical issue of consent would be needed. *See, e.g., Sandusky*, 863 F.3d at 469 (affirming denial of certification where putative class included current customers who provided their numbers to the defendant and identifying who had

given consent would require individualized inquiries). *See also Sliwa v. Bright House Networks, LLC,* 333 F.R.D. 255, 279–80 (M.D. Fla. 2019) (denying certification of similar class relating to alleged debt collection calls made to non-customers of the defendant on predominance grounds); *Trenz v. On-Line Admins., Inc.*, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying class, noting "[t]he necessity of individual inquiries is a clear bar to class certification in TCPA matters").

Courts also often strike TCPA class allegations at the pleadings stage under Rule 12(f) on this basis, especially where (as here) individualized determinations of consent are going to be needed, no matter what discovery might show. *See, e.g.*, *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016); *Eldridge*, 2017 WL 4364205, at *7-11; *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4-5 (E.D. Mo. Jan. 24, 2013). Such is true in this case.

In this case, Plaintiff's proposed class definition, as pled, would include *inter alia* "[a]ll persons throughout the United States … where the call recipient did not provide their telephone number to Credit Acceptance Corporation or did not have an account with Credit Acceptance Corporation…." ECF No. 1, ¶ 29, PageID.4. In other words, as pled, the Court would need to determine whether and the circumstances of how each of the putative class members provided their phone number to Credit Acceptance or had an account with Credit Acceptance, such that they would have provided their "prior express consent" within the meaning of the TCPA and therefore

-22-

may not have a valid Section 227(b) claim. *See* 47 C.F.R. § 64.1200(a)(1) (prerecorded calls made with "prior express consent" do not violate Section 227(b)).

Yet, **how** anyone may have "provided" their numbers to Credit Acceptance or to any third parties (and thus may have consented under the TCPA) can vary considerably depending on the person or circumstances. This will <u>necessarily</u> require this Court to make countless individualized determinations on that key issue, rendering Plaintiff unable to meet the predominance requirement under Rule 23 for her class definition as pled. This would be true no matter what discovery could show. Indeed, "prior express consent" under the TCPA need not even be written and can be simply obtained where a consumer "provides" their number to a caller as part of a transaction or inquiry. *See, e.g., Hill v. Homeward Residential, Inc.,* 799 F.3d 544, 551 (6th Cir. 2015); *Dolemba v. Kelly Servs., Inc.,* 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017) (citing 30 FCC Rcd. at 7961); *Pietzak v. Microsoft Corp*., 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015). *See also Gorss Motels, Inc. v. Safemark Sys., LP,* 931 F.3d 1094, 1101 (11th Cir. 2019) (parties do not need "magic words" to establish TCPA consent). In short, there are innumerable ways "prior express consent" can be given by or to any one person; and, as the Sixth Circuit noted, "[t]he **context of the consent provided is critical**" in a TCPA case. *Baisden v. Credit Adjusts., Inc*., 813 F.3d 338, 343 (6th Cir. 2016) (emphasis added). *See also Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) ("[T]he predominant issue of fact [in

TCPA cases] is undoubtedly one of *individual* consent." (emphasis in original)).

In sum, whether/how anyone provided their number to or had an account with Credit Acceptance, such that they gave "prior express consent" under the TCPA, are not common questions of law or fact that can be resolved by generalized proof across the entire class in a single adjudication. Countless individualized inquires on these key issues <u>will</u> be needed, and thus Plaintiff's class claims should be stricken on this basis.

The same reasons that render Plaintiff unable to meet the predominance requirement make her proposed class definition impermissibly "fail-safe" as pled and, as such, properly stricken. *See, e.g., Boyer v. Diversified Consultants, Inc.,* 306 F.R.D. 536, 540 (E.D. Mich. 2015) (holding TCPA class composed of people who did not provide "prior express consent" to be contacted was an improper fail-safe class). A proposed class definition is impermissibly fail-safe in violation of Rule 23—and thus it may also be stricken under Rule 12(f)—where, as here, the Court must make a determination on the merits of the class members' individual claims to determine membership. *See, e.g., Sauter,* 2014 WL 1814076, at *4; *Lindsay,* 2013 WL 275568, at *4. Such a faulty proposed class definition constitutes an "independent ground for denying class certification" because it "shields the putative class members from receiving an adverse judgment" and "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir. 2011).

-24-

In TCPA cases, federal courts have often stricken class allegations on this basis where the court would need to determine the merits of the class members' claims—*i.e.,* whether they consented to receive allegedly "prerecorded" calls—to determine membership. *See, e.g., Boyer,* 306 F.R.D. at 540, *see also Sauter,* 2014 WL 1814076, at *8-9 (striking proposed class "defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls"); *Pepka*, 2016 WL 8919460, at *4 (granting motion to strike TCPA class allegations case on fail-safe grounds); *Lindsay Transmission, LLC,* 2013 WL 275568, at *4 (same). Given how Plaintiff's proposed class here is pled, which would only include members with valid claims and who did not consent, this Court should strike her class allegations for this.

Lastly, with Plaintiff's underlying claim dismissed and/or her class definition stricken for the myriad reasons above, any remaining class-related allegations in the Complaint are immaterial and should also be stricken under Rule 12(f). *See, e.g., Blount v. D. Canale Beverages, Inc.*, 2003 WL 22890339, at *8 (W.D. Tenn. July 23, 2003); *Flores v. City of Cal. City,* 2019 WL 1934016, at *6 (E.D. Cal. May 1, 2019).

## <u>CONCLUSION</u>

Therefore, the Complaint should be dismissed and/or the class allegations should be stricken, and Credit Acceptance should be granted all other just relief.

Dated: May 14, 2025              Respectfully submitted,

                                 By: /s/ A. Paul Heeringa
                                 *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 14, 2025, I filed the foregoing electronically through the Court's CM/ECF system, which caused the following parties or counsel to be served by electronic means on all parties and their respective counsel of record.

*s/ A. Paul Heeringa*

A. Paul Heeringa

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY CARR, on behalf of
herself and others similarly situated

      Plaintiff,

v.

CREDIT ACCEPTANCE CORP.,

      Defendant.

Case No. 2:25-cv-10985-LJM-CI
Honorable Laurie J. Michelson

---

**BRIEF FORMAT CERTIFICATION FORM**

I, A. Paul Heeringa, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

⊠ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

⊠ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

⊠ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

⊠ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

⊠ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

⊠ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

⊠ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

-27-

Dated: May 14, 2025                Respectfully submitted,


                                   By: /s/ A. Paul Heeringa _____

                                   ***Counsel for Defendant***