**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| KIMBERLY CARR, on behalf of herself and others similarly situated, | Case No. 2:25-cv-10985-LJM-CI |
| Plaintiff, | Hon. Laurie J. Michelson |
| | Mag. Curtis Ivy, Jr. |
| v. | |
| CREDIT ACCEPTANCE CORPORATION, | |
| Defendant. | |

## <u>DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CERTAIN ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Defendant Credit Acceptance Corporation ("Credit Acceptance") hereby respectfully moves to dismiss the First Amended Complaint (*see* ECF No. 12, "FAC") filed by Plaintiff Kimberly Carr ("Plaintiff") in this matter, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1). If the FAC is not dismissed in its entirety or with prejudice, Credit Acceptance moves in the alternative to strike Plaintiff's facially-uncertifiable proposed class definition and all other class-related allegations under Fed. R. Civ. P. 12(f) and 23, as identified below.

The specific bases and authority for this Motion are more fully set forth in the attached Brief in Support, which is incorporated herein by reference as if fully stated.

Pursuant to Section III of the Court's Case Management Requirements, a "Brief Format Certification Form" is appended hereto. Pursuant to Local Rule 7.1, the

undersigned certifies that counsel for Credit Acceptance made reasonable and timely efforts to confer with counsel for Plaintiff regarding the bases for this Motion and whether Plaintiff would concur with the relief sought herein prior to filing same, including an email sent on June 11, 2025. Plaintiff's counsel responded in writing the same day, indicating that Plaintiff does not concur and thus opposes this Motion.

Dated: June 12, 2025                     Respectfully submitted,


By: /s/ A. Paul Heeringa
_____

**MANATT, PHELPS & PHILLIPS, LLP**
John W. McGuinness*
A. Paul Heeringa*
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
(312) 529-6300
Email: jmcguinness@manatt.com
 pheeringa@manatt.com

**KING & ASSOCIATES, PLLC**
Stephen W. King**
355 S. Old Woodward Ave., Ste. 100
Birmingham, MI 48009
(248) 792-2398
sking@swkinglaw.com

***Counsel for Defendant***


*Permanently admitted to E.D. Mich. Bar*
*** Local Counsel*

2

## <u>ISSUES PRESENTED</u>

1. Whether Plaintiff has adequately pled a claim for relief against Credit Acceptance under Fed. R. Civ. P. 12(b)(6). Credit Acceptance answers: "No."

2. Whether Plaintiff has pled facts demonstrating her standing to seek injunctive relief under Fed. R. Civ. P. 12(b)(1). Credit Acceptance answers: "No."

3. Whether Plaintiff's class allegations should be stricken from the FAC under Fed. R. Civ. P. 12(f) and/or 23. Credit Acceptance answers: "Yes."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

- *Andersen v. Nexa Mortg., LLC*, 2024 WL 3762098 (C.D. Cal. Aug. 12, 2024)

- *Aikens v. Synchrony Fin.*,2015 WL 5818911 (E.D. Mich. July 31, 2015)

- *Baisden v. Credit Adjusts., Inc*., 813 F.3d 338 (6th Cir. 2016)

- *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015)

- *Dobronski v. Tobias & Assocs., Inc*., 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024)

- *Eldridge v. Cabela's Inc.*, 2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)

- *Int'l IP Holdings, LLC v. Vitamin Energy, Inc.*, 2023 WL 6466560 (E.D. Mich. Oct. 4, 2023)

- *Linden v. City of Southfield, Mich.*, 75 F.4th 597 (6th Cir. 2023)

- *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017)

- *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)

- *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076 (S.D. Ohio May 7, 2014)

- *Shelby Advocs. for Valid Elections v. Hargett,* 947 F.3d 977 (6th Cir. 2020)

- *Williams v. CitiMortgage, Inc.,* 498 F. App'x 532 (6th Cir. 2012)

# TABLE OF CONTENTS FOR BRIEF IN SUPPORT

**Page**

BRIEF IN SUPPORT OF MOTION (INTRODUCTION) ......................................1

RELEVANT ALLEGATIONS ..................................................................3

APPLICABLE LEGAL STANDARDS ......................................................4

ARGUMENT .............................................................................................7

I.       Plaintiff's Entire FAC Should Be Dismissed Under Rule 12(b)(6).................7

         A.       Plaintiff Fails to Sufficiently Plead Use of Regulated "Artificial
                  or Prerecorded Voice" Technology.........................................7

         B.       Plaintiff Fails to Plausibly Allege a "Willful" or "Knowing"
                  TCPA Violation in Support of Her Request for Treble Damages.......15

         C.       Plaintiff Has Abandoned Any Vicarious TCPA Liability Theory.......16

II.      Plaintiff's Requests for Injunctive Relief Should Be Dismissed Under
         Rule 12(b)(1) for Lack of Article III Standing / Subject Matter
         Jurisdiction. ...............................................................................17

III.     Any Dismissal Should Be With Prejudice.......................................17

IV.      Alternatively, Plaintiff's Class Allegations Are Facially Uncertifiable
         and, Therefore, They Should Be Stricken Pursuant to Rules 12(f)
         and/or 23. ..................................................................................18

CONCLUSION ......................................................................................25

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aaronson v. CHW Grp., Inc.*,
  2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ...............................................8, 13

*Agne v. Papa John's Intern., Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012) ...................................................................23

*Aikens v. Synchrony Fin.*,
  2015 WL 5818911 (E.D. Mich. July 31, 2015)....................................................8

*Allison v. Wells Fargo Bank, N.A.*,
  2022 WL 10756885 (S.D. Cal. Oct. 18, 2022)..............................................8, 10

*Ames v. LaRose*,
  2023 WL 2184600 (S.D. Ohio Feb. 23, 2023) ....................................................6

*Andersen v. Nexa Mortg., LLC*,
  2024 WL 3762098 (C.D. Cal. Aug. 12, 2024) ...........................................passim

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................4, 5, 15

*Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*,
  459 U.S. 519 (1983).............................................................................................11

*Baisden v. Credit Adjusts., Inc.*,
  813 F.3d 338 (6th Cir. 2016) .............................................................................23

*Bank v. Alleviate Tax, LLC*,
  2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024)...................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................4, 5, 15

*Bickerstaff v. Lucarelli*,
  830 F.3d 388 (6th Cir. 2016) ...............................................................................5

*Blount v. D. Canale Beverages, Inc.*,
  2003 WL 22890339 (W.D. Tenn. July 23, 2003).............................................25

*Boyer v. Diversified Consultants, Inc.*,
  306 F.R.D. 536 (E.D. Mich. 2015) .............................................................24, 25

# TABLE OF AUTHORITIES
(continued)

**Page**

*Bradley v. Jefferson Cnty. Pub. Sch.*,
  598 F. Supp. 3d 552 (W.D. Ky. 2022), *aff'd*, 88 F.4th 1190 (6th Cir. 2023) ...............................................................................................15

*Canary v. Youngevity Int'l, Inc.*,
  2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ...................................16

*Caruso v. Cavalry Portfolio Svcs.*,
  2019 WL 4747679 (S.D. Cal. Sept. 30, 2019).....................................8

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
  2021 WL 1946645 (M.D. Tenn. May 14, 2021) .................................17

*Curry v. Synchrony Bank, N.A.*,
  2015 WL 7015311 (S.D. Miss. Nov. 12, 2015)...............................8, 10

*Davis v. Rockloans Marketplace, LLC*,
  2024 WL 4896587 (S.D. Cal. Nov. 26, 2024)................................8, 15

*Demarattes v. Enhanced Recovery Co., LLC*,
  2022 WL 4121217 (E.D.N.Y. Sept. 9, 2022) ......................................8

*Dobronski v. Tobias & Assocs., Inc.*,
  2024 WL 1174553 (E.D. Mich. Mar. 18, 2024)..................................17

*Dolemba v. Kelly Servs., Inc.*,
  2017 WL 429572 (N.D. Ill. Jan. 31, 2017).........................................22

*Duran v. Wells Fargo Bank, N.A.*,
  878 F. Supp. 2d 1312 (S.D. Fla. 2012) ..............................................14

*Eidson v. Tenn. Dep't of Child. Servs.*,
  510 F.3d 631 (6th Cir. 2007) ...............................................................5

*Eldridge v. Cabela's Inc.*,
  2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)...............................19, 20

*Frame v. Cal-W. Reconveyance Corp.*,
  2011 WL 3876012 (D. Ariz. Sept. 2, 2011) .......................................18

*Frato v. Cap. Mgmt. Servs. L.P.*,
  2025 WL 73286 (D.N.J. Jan. 8, 2025).................................................8

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982).............................................................................19

# TABLE OF AUTHORITIES
(continued)

**Page**

*Gene and Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) ...............................................................24

*Girgis v. Countrywide Home Loans, Inc.*,
   733 F. Supp. 2d 835 (N.D. Ohio 2010) ...............................................15

*Gorss Motels, Inc. v. Safemark Sys., LP*,
   931 F.3d 1094 (11th Cir. 2019) ...........................................................22

*Grendell v. Ohio S. Ct.*,
   252 F.*3d* 828, 832 (6th Cir. 2001) .........................................................7

*Hernandez v. Select Portfolio, Inc.*,
   2015 WL 3914741 (C.D. Cal. June 25, 2015) ....................................14

*Hicks v. Alarm.com Inc.*,
   2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ...............................11, 12

*Hill v. Homeward Residential, Inc.*,
   799 F.3d 544 (6th Cir. 2015) ...............................................................22

*HMS Property Mgmt. Group Inc. v. Miller*,
   69 F.3d 537, 1995 WL 641308 (6th Cir. Oct. 31, 1995) ....................15

*In re Livent, Inc. Noteholders Secs. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...................................................6

*In re Rules & Regs. Implementing the TCPA*,
   30 FCC Rcd. 7961 (2015) .......................................................................2

*Int'l IP Holdings, LLC v. Vitamin Energy, Inc.*,
   2023 WL 6466560 (E.D. Mich. Oct. 4, 2023) ...............................6, 14

*Jiangbo Zhou v. Lincoln Elec. Co.*,
   2020 WL 2512865 (S.D. Ohio May 15, 2020) ......................................6

*Jones v. City of Cincinnati*,
   521 F.3d 555 (6th Cir. 2008) .................................................................5

*Laccinole v. Gulf Coast Collection Bureau, Inc.*,
   2023 WL 157719 (D.R.I. Jan. 11, 2023) ...............................................8

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
   780 F.3d 1101 (11th Cir. 2015) ...........................................................16

*Linden v. City of Southfield, Mich.*,
   75 F.4th 597 (6th Cir. 2023) ..................................................................5

# TABLE OF AUTHORITIES
(continued)

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
  2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ..........................................20, 24, 25

*Loreto v. Procter & Gamble Co.*,
  2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ....................................................19

*Lyshe v. Levy*,
  854 F.3d 855 (6th Cir. 2017) ...............................................................................6

*Manopla v. Sansone Jr's 66 Automall*,
  2020 WL 1975834 (D.N.J. Jan. 10, 2020)............................................................3

*Metzler v. Pure Energy USA LLC*,
  2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ...............................................2, 8, 10

*Miller v. Time Warner Cable Inc.*,
  2016 WL 7471302 (C.D. Cal. Dec. 27, 2016)................................................7, 17

*Moffet v. Everglades Coll., Inc.*,
  2024 WL 1657195 (M.D. Fla. Mar. 4, 2024) .......................................................8

*Morse v. McWhorter*,
  290 F.3d 795 (6th Cir. 2002) .............................................................................18

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
  650 F.3d 1046 (6th Cir. 2011) .............................................................................5

*Pepka v. Kohl's Dep't Stores, Inc.*,
  2016 WL 8919460 (C.D. Cal. Dec. 21, 2016)...............................................20, 25

*Pietzak v. Microsoft Corp.*,
  2015 WL 7888408 (C.D. Cal. Nov. 17, 2015) ...................................................22

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) .............................................................................19

*Rahimian v. Adriano*,
  2022 WL 798371 (D. Nev. Mar. 16, 2022)....................................................8, 15

*Randleman v. Fid. Nat'l Title Ins. Co.*,
  646 F.3d 347 (6th Cir. 2011) .............................................................................25

*Rogers v. Assurance IQ, LLC*,
  2023 WL 2646468 (W.D. Wash. Mar. 27, 2023)...........................................8, 11

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
  863 F.3d 460 (6th Cir. 2017) .......................................................................19, 20

# TABLE OF AUTHORITIES
(continued)

**Page**

*Saunders v. NCO Fin. Sys., Inc.*
  910 F. Supp. 2d 464 (E.D.N.Y. 2012) .................................................2

*Sauter v. CVS Pharmacy, Inc.*,
  2014 WL 1814076 (S.D. Ohio May 7, 2014).........................................19, 24, 25

*Sec'y of Labor v. Macy's, Inc.*,
  2021 WL 5359769 (S.D. Ohio Nov. 17, 2021) ..............................................5, 14

*Shelby Advocs. for Valid Elections v. Hargett*,
  947 F.3d 977 (6th Cir. 2020) ..............................................6, 17

*Sherrod v. Enigma Software Grp. USA, LLC*,
  2016 WL 25979 (S.D. Ohio Jan. 4, 2016) ..............................................20

*Sliwa v. Bright House Networks, LLC*,
  333 F.R.D. 255 (M.D. Fla. 2019) ..............................................20

*Smith v. Pro Custom Solar LLC*,
  2021 WL 141336 (D.N.J. Jan. 15, 2021)..............................................7

*Soundboard Ass'n v. FTC*,
  888 F.3d 1261 (D.C. Cir. 2018) ..............................................9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..............................................6

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)..............................................7, 17

*Tam Travel, Inc. v. Delta Airlines, Inc.*,
  583 F.3d 896 (6th Cir. 2009) ..............................................5

*Tenn. Gen. Assembly v. U.S. Dep't of State*,
  931 F.3d 499 (6th Cir. 2019) ..............................................6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..............................................7, 17

*Trenz v. On-Line Admins., Inc.*,
  2020 WL 5823565 (C.D. Cal. Aug. 10, 2020) ..............................................20

*United States v. Doyle*,
  2022 WL 1186182 (S.D. Ohio Apr. 21, 2022)..............................................18

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)..............................................20

# TABLE OF AUTHORITIES
(continued)

**Page**

*Williams v. CitiMortgage, Inc.*,
   498 F.App'x 532 (6th Cir. 2012)..................................................6, 14

*Winters v. Quicken Loans Inc.*,
   2020 WL 5292002 (D. Ariz. Sept. 4, 2020) ..........................................8

## STATUTES

47 U.S.C. § 227(b) ..............................................................passim

47 U.S.C. § 227(b)(1)(A)(iii)..................................................1, 7, 9

47 U.S.C. § 227(b)(3)................................................................2

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(1) ......................................................7, 22

47 C.F.R. § 64.1200(a)(2) .........................................................1

## RULES

Fed. R. Civ. P. 8 ...................................................................15

Fed. R. Civ. P. 12(b)(1)......................................................6, 7, 17

Fed. R. Civ. P. 12(b)(6) ......................................................passim

Fed. R. Civ. P. 12(f) .........................................................passim

Fed. R. Civ. P. 23 .........................................................19, 21, 24

Fed. R. Civ. P. 23(b)(3)...........................................................19

Fed. R. Civ. P. 23(c)(1)(A) .......................................................19

## BRIEF IN SUPPORT OF MOTION (INTRODUCTION)

Like its fatally-flawed predecessor, the FAC does not plausibly allege that Plaintiff received an "artificial or prerecorded voice" message from or on behalf of Credit Acceptance in violation of TCPA's rules governing the use of such technology. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2). Given that Plaintiff failed to cure this deficiency (among others) when amending her original complaint, despite it being raised in Credit Acceptance's previous dispositive motion (*see* ECF No. 10), and in some ways made that defect worse as discussed below, she should not be given another chance to amend. Thus, the FAC should be dismissed with prejudice.

Indeed, though Plaintiff's FAC still conflates and does not specify which technology she contends was used—which is problematic in its own right, since an "artificial" voice and a "prerecorded" voice are not the same thing, as discussed below—Plaintiff's claim remains based on a single "artificial or prerecorded voice message" she allegedly received on her cell phone, stemming from a call that she seemingly did not even answer (or at least she does not plead if she did). However, Plaintiff's FAC still critically omits sufficient non-conclusory facts, pled in accordance with federal pleading standards, supporting this key element of her claim.

Regardless, while the TCPA is undoubtedly an important remedial statute designed to protect consumers from unscrupulous telemarketers, such claims still require sufficient factual support to survive dismissal under the Federal Rules of Civil

Procedure, and federal district courts have uniformly recognized that TCPA plaintiffs (like all other federal plaintiffs) do not get a free pass to discovery through mere conclusory allegations.[1] Such is all Plaintiff's FAC offers. And while courts of course do not expect a plaintiff to know the exact technical specifications of a call at the pleadings stage, they have consistently held that TCPA plaintiffs bringing such a claim must plead actual specific facts (not bald conclusions) and provide sufficient contextual details about the subject calls supporting an inference that such "voice" technology was actually used, or face dismissal under Rule 12(b)(6). *See, e.g., Andersen v. Nexa Mortg., LLC*, 2024 WL 3762098, at *4 (C.D. Cal. Aug. 12, 2024).

Here, Plaintiff's FAC remains chock full of bald conclusory statements and regurgitations of the statute and applicable case law, all in a desperate attempt to suggest that the single "message" at issue in this case violated Section 227(b) of the TCPA, which cannot withstand a Rule 12(b)(6) motion. *See, e.g., Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing similar claim where plaintiff alleged receipt of one "prerecorded" message but did not

---

[1] This is for good reason. The TCPA has become one of the most heavily litigated federal statutes in the U.S. since its enactment in 1991. Given the relief it affords, this is unsurprising: $500 in statutory damages per violative call, which can be trebled to $1,500 for "willful" or "knowing" violations. *See* 47 U.S.C. § 227(b)(3). Accordingly, the TCPA "has strayed far from its original purpose," unwittingly spawned a cottage industry of class action litigation, and has become "the poster child for lawsuit abuse" in this country. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). *See also Saunders v. NCO Fin. Sys., Inc.* 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012) (noting that even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of ruinous damages and exorbitant legal fees through costly class action litigation).

provide sufficient contextual details); *Manopla v. Sansone Jr's 66 Automall*, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020) (dismissing where the plaintiff "merely proffer[ed] the content of the message and conclusory allege[d] that Defendant utilized a pre-recorded message" but otherwise pled insufficient factual support). Plaintiff's amendments only underscore these fatal pleading defects, as she now includes various inconsistent and contradictory (and thus inherently implausible) allegations in her FAC that belie any reasonable inference that an "artificial or prerecorded" voice was actually used here. *See* discussion at pp. 13-15, *infra*. For these reasons, and others below, her entire FAC should be dismissed with prejudice.

Alternatively, if the FAC manages to survive dismissal, the class allegations within remain facially inadequate, such that certification still cannot be granted as pled. Thus, the Court should strike those clearly improper allegations now under Rules 12(f) and/or 23, before the parties waste effort in discovery relating to them.

## RELEVANT ALLEGATIONS

In pertinent part, Plaintiff's FAC alleges—or, rather, merely concludes—that Plaintiff received "at least one call" from Credit Acceptance "in March 2025" that "delivered an artificial or prerecorded voice message" to her purported cell phone number ending in 1963. ECF No. 12, ¶¶ 16-18, PageID.77. Though she still oscillates between using the singular term "call" and the plural term "calls" throughout her

pleading despite having amended, Plaintiff's FAC only refers to <u>one</u> such call, which she allegedly received "on or about March 4, 2025." *Id*. ¶¶ 18, 21, 30, PageID.78-79.

Like her original complaint, Plaintiff's FAC also offers a variety of conclusory statements, parroting the statute or applicable case law, to suggest that this one "message" was either "recorded" or involved use of an "artificial or prerecorded voice" in purported violation of Section 227(b) of the TCPA. *See, e.g., id.* ¶¶ 2, 3, 6, 12, 17-22, 30, 33, 41, 47, 50, 51, 58, 70, 81, PageID.75-85. However, Plaintiff still does not specify which of these two different technologies that she contends was used here, let alone indicate whether she even answered the call or if her phone rang, even after amending. Worse, Plaintiff's FAC now alleges, albeit likewise without any factual basis or enhancement, that: (i) the subject message was "intended for a [specific] person named Cornelius" and (ii) she "spoke with" a *live* Credit Acceptance "representative" at some unspecified point. *Id.,* ¶¶ 22, 33, 42, 43, Page.ID 78-80.

## **APPLICABLE LEGAL STANDARDS**

Rule 12(b)(6) mandates dismissal of a complaint that fails to state a claim for relief. Under this rule, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the

elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (quotation marks and citation omitted). *See also Twombly*, 550 U.S. at 570 (a plaintiff must allege facts that nudge their claims across the line from merely "conceivable" to "plausible"). In other words, Plaintiff must provide sufficient "'specific facts necessary to establish the cause of action'" in her pleading to avoid a dismissal, and she cannot rely on mere conclusory statements. *Linden v. City of Southfield, Mich.,* 75 F.4th 597, 601–02 (6th Cir. 2023) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).

Further, while this Court must generally accept well-pled factual allegations in the FAC as true under this Rule, it need <u>not</u> accept as true mere legal conclusions couched as fact, unreasonable inferences, or unsupported speculation. *See, e.g., New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1050 (6th Cir. 2011); *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *Eidson v. Tenn. Dep't of Child. Servs.,* 510 F.3d 631, 634 (6th Cir. 2007). The Court also need not accept internally inconsistent and contradictory allegations in Plaintiff's FAC as true or reconcile them under this Rule when deciding this Motion, either. *See, e.g., Sec'y of Labor v. Macy's, Inc.,* 2021 WL 5359769, at *5 (S.D. Ohio Nov. 17, 2021) ("There is also an exception to the general principle that the Court accepts all factual allegations as true for internally inconsistent allegations, which need not (and indeed cannot) be accepted as

true for purposes of a motion to dismiss.") (citation omitted); *Int'l IP Holdings, LLC v. Vitamin Energy, Inc.,* 2023 WL 6466560, at *8 (E.D. Mich. Oct. 4, 2023) (citing *Jiangbo Zhou v. Lincoln Elec. Co.,* 2020 WL 2512865, at *4 (S.D. Ohio May 15, 2020) ("It is well established that, where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.") (internal citation and quotation omitted)); *Williams v. CitiMortgage, Inc.,* 498 F.App'x 532, 536 (6th Cir. 2012) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself....") (quoting *In re Livent, Inc. Noteholders Secs. Litig.,* 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) (citations omitted)).

Additionally, a plaintiff's lack of Article III standing to bring a claim is considered under Rule 12(b)(1), as the Court lacks federal subject matter jurisdiction to hear the claim. *See, e.g., Lyshe v. Levy,* 854 F.3d 855, 857 (6th Cir. 2017) (citations omitted); *Ames v. LaRose,* 2023 WL 2184600, at *2 (S.D. Ohio Feb. 23, 2023) (citing *Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019)).

In this regard, beyond the three familiar traditional standing elements (*see Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016)), to have Article III standing to seek injunctive relief in any federal case, all plaintiffs must plead they are at imminent risk of a ***future*** injury. *See, e.g., Shelby Advocs. for Valid Elections v. Hargett,* 947 F.3d

977, 981 (6th Cir. 2020) (citing *Grendell v. Ohio S. Ct.,* 252 F.*3d* 828, 832 (6th Cir. 2001)); *see also Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (to have Article III standing to seek injunctive relief, "the threatened injury is 'certainly impending,' or [that] there is a 'substantial risk' that the harm will occur."); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (ruling similarly). Where a plaintiff lacks (*i.e.*, does not plead sufficient facts showing) Article III standing to seek injunctive relief, the Court lacks federal subject matter jurisdiction to award such relief and may dismiss the requests for injunctive relief under Rule 12(b)(1). *See, e.g., Miller v. Time Warner Cable Inc.,* 2016 WL 7471302, at *2–4 (C.D. Cal. Dec. 27, 2016).

## **ARGUMENT**

### I.     **Plaintiff's Entire FAC Should Be Dismissed Under Rule 12(b)(6).**

Section 227(b) of the TCPA provides, *inter alia*, that no person shall "make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) (applicable related implementing regulations). As demonstrated below, Plaintiff's FAC fails to state such a claim.

#### A.     **Plaintiff Fails to Sufficiently Plead Use of Regulated "Artificial or Prerecorded Voice" Technology.**

To adequately state a Section 227(b) claim, a "complaint must include some factual allegations beyond 'the call had a prerecorded [or artificial] voice.'" *Smith v.*

*Pro Custom Solar LLC*, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021). However, Plaintiff cannot simply parrot the statutory text or applicable case law in this regard, and "must include factual allegations indicating that a prerecorded voice, as opposed to that of a real, live person, was used." *Andersen*, 2024 WL 3762098, at *4; *see also Curry v. Synchrony Bank, N.A.,* 2015 WL 7015311, at *2-3 (S.D. Miss. Nov. 12, 2015) (dismissing where plaintiff had "'not provided sufficient contextual details to determine whether she spoke to a human or merely heard a recording upon picking up the phone'") (quoting *Aikens v. Synchrony Fin.,* 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015)); *Allison v. Wells Fargo Bank, N.A.,* 2022 WL 10756885, at *3 (S.D. Cal. Oct. 18, 2022) (dismissing and rejecting argument that "the use of a 'prerecorded voice' is [a] self-defining" term). These authorities, among many others, show that a plaintiff bringing such a TCPA claim must provide sufficient contextual details from which it can be inferred that such "voice" technology was used, or face dismissal.[2]

As applied here, Plaintiff's FAC, like its predecessor, is <u>replete</u> with conclusory statements and regurgitations of applicable case law asserting that the "voice" on the

---

[2] *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *4 (E.D. Va. Apr. 15, 2019); *Caruso v. Cavalry Portfolio Svcs.,* 2019 WL 4747679, at *4 (S.D. Cal. Sept. 30, 2019); *Winters v. Quicken Loans Inc.,* 2020 WL 5292002, at *4 (D. Ariz. Sept. 4, 2020); *Rahimian v. Adriano,* 2022 WL 798371, at *2 (D. Nev. Mar. 16, 2022); *Demarattes v. Enhanced Recovery Co., LLC,* 2022 WL 4121217, at *7 (E.D.N.Y. Sept. 9, 2022); *Laccinole v. Gulf Coast Collection Bureau, Inc.,* 2023 WL 157719, at *3 (D.R.I. Jan. 11, 2023); *Metzler,* 2023 WL 1779631, at *1, 6; *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023); *Moffet v. Everglades Coll., Inc.,* 2024 WL 1657195, at *3 (M.D. Fla. Mar. 4, 2024); *Davis v. Rockloans Marketplace, LLC,* 2024 WL 4896587, at *2 (S.D. Cal. Nov. 26, 2024); *Frato v. Cap. Mgmt. Servs. L.P.,* 2025 WL 73286, at *3 (D.N.J. Jan. 8, 2025) (all dismissing).

subject message was either "recorded" or was "artificial or prerecorded" in purported violation of Section 227(b) of the TCPA. *See, e.g.,* ECF No. 12, ¶¶ 2, 3, 6, 12, 17-22, 30, 33, 41, 47, 50, 51, 58, 70, 81, PageID.75-85. However, Plaintiff still fails to specify which type of "voice" technology that she contends was actually used here, even though the terms "artificial" and "prerecorded" are not synonymous under the TCPA and they involve vastly different forms of technology. *See* 47 U.S.C. §227(b)(1)(A)(iii) (restricting calls made using an "artificial or prerecorded voice").

This omission is critical and demonstrates how Plaintiff is merely throwing darts at a proverbial dartboard here, not pleading actual facts. Indeed, an "artificial" voice is exactly what it sounds like—the voice of a person that does not exist (*e.g.,* artificial intelligence or a "soundboard")—that is used to interact with the called party. *See also Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1263 (D.C. Cir. 2018) (discussing some common forms of artificial voice technology). In contrast, a "prerecorded" voice is far less advanced than an "artificial" voice and is typically a live person making an audio recording in advance of the call, such that there is no interaction with the recipient. In short, that Plaintiff's FAC continues to conflate and does not differentiate between these two distinct technologies, which should be easy to do given that such facts should be in Plaintiff's possession, is indicative of its many facial defects.

Nevertheless, even if the Court takes these wholly conclusory allegations as true, they are insufficient to plausibly state a Section 227(b) claim given the weight of

applicable federal authority on this point. *See, e.g., Allison, Curry*, *Curry, Metlzer,* and *Andersen*, *supra*. Rather, Plaintiff at best uses some buzzwords from case law and refers to the message as "generic" and the voice in it as sounding "robotic" (ECF No. 12, ¶ 9, PageID.77), but still critically omits important supporting contextual details.

For example, Plaintiff still does not indicate in her FAC whether she answered the call or if she just received a voicemail that was "delivered" to her phone somehow, such that she could have determined whether it was truly an artificial or prerecorded voice or someone reading a script—*e.g.,* the caller failed to alter their tone of voice in interacting with her or was non-responsive to her questions. This continuing omission is telling because, in a live telephone interaction as opposed to a voicemail message— which is what Plaintiff possibly alleges here, since she does not indicate if she answered the call—it might be possible to discern whether the caller was live or "robot," since no actual conversation can occur in the latter. *See, e.g., Metzler,* 2023 WL 1779631, at *1, 6 (dismissing similar TCPA claim based on one voicemail, where the content of "[t]he voicemail itself [as alleged] provide[d] no indication that it was prerecorded as opposed to having been left by a caller reading from a script").

Further, a "robotic" sounding voice might be an *artificial* voice in some instances, which again is a different form of technology than a *prerecorded* voice as noted above. Yet, in at least one instance, Plaintiff's FAC alleges the subject message was only "recorded" rather than "artificial." *See* ECF No. 12, ¶ 23, PageID.78. This

-10-

continuing pleading inconsistency, apparently carried over from her original complaint,[3] further underscores the many facial deficiencies in her FAC overall.

Plaintiff also still does not provide details about the message's "pattern or tone of speech" (ECF No. 12, ¶ 20, PageID.78) supporting her conclusions the voice she heard was "recorded" or "artificial," even after amending. Such contextual details matter significantly in cases brought under Section 227(b) of the TCPA, as the many authorities above show. Their absence here warrants dismissal. *See, e.g., Rogers*, 2023 WL 2646468, at *4 (dismissing, holding: "[e]ven at this pre-discovery stage, Plaintiffs should be able to allege facts establishing that the calls were in-fact pre-recorded" and such "information is known to Plaintiffs without any discovery"); *Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983) ("It is not ... proper to assume that [the plaintiff] can prove facts that [s]he has not alleged[.]").

Moreover, what little (if any) "factual" detail Plaintiff provides in her FAC about the subject "message" does not move the needle from "conceivable" to "probable" or help her avoid dismissal on these grounds when applying federal pleading standards. That the one message was "generic" or "impersonal" does not support an inference it was prerecorded or artificial, as opposed to a live person reading from a script. *See, e.g., Hicks v. Alarm.com Inc.,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (finding allegations about "generic" message insufficient to

---

[3] *See* ECF No. 1, ¶¶ 17 &19, PageID.2 (stating the message was only "prerecorded").

support an inference it was prerecorded, without more). In fact, any person reading a script and/or leaving a voicemail might leave a "generic" or "robotic" (or "monotone") sounding message, which is the whole point of using a script—uniformity.

While Plaintiff does not allege that *she* received the same message multiple times, she now relies on a third party website and states "[o]ther consumers have received voice messages … that are identical in speech pattern, tone, and content." Dkt. 12, ¶ 24, Page.ID 78 (citing https://lookup.robokiller.com/p/628-222-7839). This new allegation does not save her from dismissal on this basis for several reasons.

Firstly, the third party website that Plaintiff cites merely reflects a ***single, undated, partial recording*** of a message anonymously posted by an unidentified individual, not a message "identical" in "content" to the one at issue here. *See also Hicks,* 2020 WL 9261758, at *5 (rejecting under Rule 12(b)(6) and striking under Rule 12(f) similar "superfluous historical" allegations about a third party website in a TCPA case where the message on the website was not identical to the one at issue, noting such allegations "offer attenuated information that does little to support [the] [p]laintiff's claims" at bar). Simply put, this "fact" does not support her claim at all.

Plaintiff also inconsistently alleges elsewhere in her FAC that the subject message "did not identify any specific recipient" on the one hand, and that it was "intended for a [specific] person named Cornelius" on the other, which further undermines her conclusory allegations about the content. Dkt. 12, ¶¶ 22, 33, Page.ID

78-79. Though Plaintiff does not provide any factual basis for her new conclusion that the message was intended for "Cornelius" and she noticeably does not indicate in her FAC how she could possibly know this—*i.e.,* whether the message stated the name, she spoke with the caller who told her this, or she learned it in some other fashion— she cannot have it both ways. A message asking for a *specific person by name*, if that is what Plaintiff is alleging occurred here, could hardly be considered "generic" or "impersonal." It also defies logic and common sense, and it would be unreasonable to infer, that any company would prerecord the specific names of hundreds (or even thousands or hundreds of thousands) of individuals just so that it could later indiscriminately send out prerecorded voicemails *en masse*. In any event, the Court need not take her new unsupported conclusions about "Corenlius" as true. *See Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing TCPA claim, noting "simply asserting a purported fact does not make it one, where there are no factual allegations to support the asserted conclusion.").

These omissions also seem purposeful because, if Plaintiff contends she learned about "Corenlius" during the one alleged call from the caller, it is the death knell to her claim since a live call does not violate Section 227(b) of the TCPA. *See, e.g., Andersen,* 2024 WL 3762098, at *4; *see also Aaronson,* 2019 WL 8953349, at *3 (dismissing where "[c]omplaint allege[d] that after plaintiff answered the calls, he was greeted by a live, human representative"). In this regard, Plaintiff now alleges that she

"**spoke with** one of Defendant's representatives and informed Defendant that it was calling the wrong number." Dkt. 12, ¶ 42, Page.ID 80 (emphasis added). Yet, Plaintiff does not specify how or when this conversation occurred, and again only refers to the <u>one</u> call on March 4, 2025 in her FAC. *See* ECF No. 12, ¶¶ 18, 21, 30, PageID.78-79. Given the lack of supporting contextual details, which Plaintiff could have easily pled in her FAC but she apparently declined, the only reasonable inference to be made from her allegations overall is that she "spoke with" a live person on this March 4, 2025 call and learned about "Cornelius" then, and not to a "robot" as she alleges. As one court aptly noted when dismissing a similarly-defective claim on this basis, however, Plaintiff's new allegation that she spoke to a live person further "negates a claim that the call[] [in this case] w[as] made by an … artificial or prerecorded voice." *Duran v. Wells Fargo Bank, N.A.,* 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012).

The bottom line here is that, regardless of whether Plaintiff contends that the message identified "Corenlius" or that the caller did (and she does not specify either way), these new allegations belie any reasonable inference that an "artificial or prerecorded voice" was used, and this Court should not accept such obviously inconsistent and contradictory allegations as true. *See*, *e.g., Macy's, Inc.*, 2021 WL 5359769, at *5; *Int'l IP Holdings, LLC;* 2023 WL 6466560, at *8; *Williams,* 498 F. App'x at 536; *see also Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) (noting "[c]ontradictory allegations … are inherently

-14-

implausible, and [thus] fail to comply with [Fed. R. Civ. P.] 8, *Twombly*, and *Iqbal*"). It is also axiomatic courts "'need not indulge in [such] unreasonable inferences'" when ruling on Rule 12(b)(6) motion. *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835, 843 (N.D. Ohio 2010) (quoting *HMS Property Mgmt. Group Inc. v. Miller*, 69 F.3d 537 (Table), 1995 WL 641308 at \*3 (6th Cir. Oct. 31, 1995)). *See also Bradley v. Jefferson Cnty. Pub. Sch.,* 598 F. Supp. 3d 552, 557 (W.D. Ky. 2022), *aff'd*, 88 F.4th 1190 (6th Cir. 2023) (reviewing a complaint under 12(b)(6) is a "'context-specific task that requires the reviewing court to draw on its judicial experience and common sense'") (quoting *Iqbal*, 556 U.S. at 679).  Neither should this Court here.

All told, Plaintiff's FAC remains devoid of necessary contextual "factual allegations indicating that a prerecorded voice, as opposed to that of a real, live person, was used" here. *Andersen*, 2024 WL 3762098, at \*4. "[T]his kind of information should be available to plaintiffs bringing TCPA claims" and it must be well-pled to support such a claim. *Davis*, 2024 WL 4896587, at \*2 (dismissing). But "[w]ithout further specifics, Plaintiff's allegation [in this case that the subject voice was artificial or prerecorded] is conclusory" and cannot overcome dismissal under Rule 12(b)(6). *Rahimian*, 2022 WL 798371, at \*2-3. Therefore, the FAC should be dismissed.

### B.   Plaintiff Fails to Plausibly Allege a "Willful" or "Knowing" TCPA Violation in Support of Her Request for Treble Damages.

Plaintiff also vaguely suggests that the purported TCPA violation was "knowing"—*i.e.*, that Credit Acceptance "had knowledge that it was using an artificial

or prerecorded voice"—in a veiled attempt to support her request treble damages. *See, e.g.*, Dkt. 12, ¶ 47 and Prayer for Relief, Page.ID.81-82. However, this is insufficient and cannot survive dismissal under Rule 12(b)(6), either. *See, e.g., Canary v. Youngevity Int'l, Inc*., 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for alleged willful/knowing TCPA violations because inter alia it "consist[ed] of nothing more than bare-bones legal conclusions"); *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true.").

### C.    Plaintiff Has Abandoned Any Vicarious TCPA Liability Theory.

As argued in Credit Acceptance's previous motion to dismiss, Plaintiff's original complaint alleged, in conclusory fashion and without sufficient requisite factual support, that Credit Acceptance and/or unknown third parties were responsible for "delivering" the subject message to her cell phone; thus, Plaintiff had not sufficiently alleged a direct or vicarious TCPA liability theory, as is also required to avoid dismissal in any TCPA case. *See* ECF No. 10, Page.ID 51-61. Though Credit Acceptance certainly does not concede the issue of direct liability or that her FAC sufficiently pleads such a theory, Plaintiff's FAC seems to have removed references to third party involvement and, therefore, Plaintiff has apparently abandoned a vicarious liability theory. To the extent she is still asserting such a theory, however, it

fails as a matter of law as it lacks any supporting facts; and, thus, the FAC should be dismissed on this basis, as well. *See, e.g.*, *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645, at \*4 (M.D. Tenn. May 14, 2021) (dismissing on this basis, holding a TCPA plaintiff "must allege some factual predicate that gives rise to an inference of an agency relationship" to state a vicarious TCPA liability theory and avoid dismissal under Rule 12(b)(6)); *Dobronski v. Tobias & Assocs., Inc.*, 2024 WL 1174553, at \*3 (E.D. Mich. Mar. 18, 2024) (citing *Cunningham,* ruling similarly).

II.   **Plaintiff's Requests for Injunctive Relief Should Be Dismissed Under Rule 12(b)(1) for Lack of Article III Standing / Subject Matter Jurisdiction.**

To demonstrate standing to seek injunctive relief, a plaintiff must plead facts supporting an inference that they are at imminent risk of a future injury by the defendant. *See, e.g., Driehaus*, 573 U.S. at 158; *Shelby*, 947 F.3d at 981; *Transunion*, 594 U.S. at 435. Here, there are no such allegations pled in the FAC. Instead, Plaintiff makes only one generalized request for injunctive relief without factual support suggesting she is at any risk of a future injury, let alone one that is imminent, such that she would have standing. *See, e.g.,* ECF No. 12, ¶ 79. As such, these allegations should be dismissed under Rule 12(b)(1) for lack of standing. *See, e.g., Miller,* 2016 WL 7471302, at \*2–4 (dismissing requests for injunctive relief in TCPA case).

III.   **Any Dismissal Should Be With Prejudice.**

The Court should dismiss the FAC with prejudice. Of course, it is proper to dismiss a complaint with prejudice where a plaintiff already had a chance to amend

and the amendments failed to cure the complaint's deficiencies. *See, e.g., United States v. Doyle,* 2022 WL 1186182, at *15 (S.D. Ohio Apr. 21, 2022); *Morse v. McWhorter,* 290 F.3d 795, 800 (6th Cir. 2002); *see also Frame v. Cal-W. Reconveyance Corp.,* 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions"). Here, Plaintiff already amended but, despite being represented by counsel and having the benefit of a prior dispositive motion when doing so (*see* ECF No. 10), she ultimately did not cure all of the fatal defects in her original pleading identified in the Credit Acceptance's previous motion or above. And in some ways she made those defects far worse through the inconsistent and contradictory allegations she added. If Plaintiff had any more actual plausible *facts* to allege, rather than more bald conclusions or implausible allegations, she could (and should) have pleaded them by now. That she did not leads to the logical conclusions that such facts must not exist, and any further chances to amend would be futile. Thus, the FAC should be dismissed with prejudice. *See Doyle*, *Morse*, and *Frame*, *supra*.

## IV. <u>Alternatively, Plaintiff's Class Allegations Are Facially Uncertifiable and, Therefore, They Should Be Stricken Pursuant to Rules 12(f) and/or 23.</u>

Lastly, it is well settled that "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action and, thus, that a court may properly resolve class certification at the pleadings stage on a defendant's

motion to strike before the plaintiff has moved to certify. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). Further, "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time." *Pilgrim*, 660 F.3d at 949 (affirming district court order striking class allegations at the pleading stage).

In accordance with the foregoing binding authority, courts in this Circuit have widely recognized class allegations may be stricken at the pleadings stage before discovery under Rule 12(f) where, as here, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met" under Rule 23. *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (quoting *Loreto v. Procter & Gamble Co.*, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013)) (striking class definition in TCPA case at the pleadings stage); *see also Eldridge v. Cabela's Inc.*, 2017 WL 4364205, at *10 (W.D. Ky. Sept. 29, 2017) (same). As applied here, it is readily apparent from the face of the FAC that Plaintiff cannot meet the requirements for class certification under Rule 23 for at least two reasons.

For one, Rule 23(b)(3) requires that "questions of law or fact common to class members must predominate over any questions affecting only individual members[.]" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *as corrected* (Sept. 1, 2017). "A common issue of fact or law does not exist unless 'determination of its truth or falsity will resolve an issue that is central to

the validity of each one of the claims in one stroke.'" *Sherrod v. Enigma Software Grp. USA, LLC*, 2016 WL 25979, at *6 (S.D. Ohio Jan. 4, 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Applying this rule, courts have consistently denied class certification in TCPA cases where individualized factual and legal inquiries on the critical issue of consent would be needed. *See, e.g., Sandusky*, 863 F.3d at 469 (affirming denial of certification where putative class included current customers who provided their numbers to the defendant and identifying who had given consent would require individualized inquiries). *See also Sliwa v. Bright House Networks, LLC,* 333 F.R.D. 255, 279–80 (M.D. Fla. 2019) (denying certification of similar class relating to alleged debt collection calls made to non-customers of the defendant on predominance grounds); *Trenz v. On-Line Admins., Inc.*, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying class, noting that "[t]he necessity of individual inquiries is a clear bar to class certification in TCPA matters").

Courts also often strike TCPA class allegations at the pleadings stage under Rule 12(f) on this basis, especially where (as here) individualized determinations of consent are going to be needed, no matter what discovery might show. *See, e.g., Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016); *Eldridge*, 2017 WL 4364205, at *7-11; *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4-5 (E.D. Mo. Jan. 24, 2013). Such is true in this case.

Here, as pled, Plaintiff's amended proposed class definition would include *inter*

*alia* "[a]ll persons and entities throughout the United States" who allegedly received a call "with an artificial or prerecorded voice" from Credit Acceptance on a "number assigned to a cellular telephone service, but not assigned to a Credit Acceptance Corporation accountholder." ECF No. 12, ¶ 51, PageID.81. Even after amending, however, this proposed class definition does not cure the defects of the previous iteration in this regard (*see* ECF No. 10, Page.ID 66-68), as Plaintiff still will be unable to meet the Rule 23 predominance requirement as pled for several reasons.

For example, as the proposed class is defined, this Court would need to determine as an initial matter whether any calls that any putative class members allegedly received involved an "artificial or prerecorded" voice or was a live call, which is obviously a key element of the underlying claim and are not synonymous terms under the TCPA as noted above. Since Plaintiff cannot seem to distinguish between these different technologies, surely neither will the putative class members.

Perhaps more importantly, Plaintiff's proposed class definition, as pled, would also require the Court to determine whether the number called is or was "assigned to a Credit Acceptance Corporation accountholder" (whatever that means[4]) to determine membership. In this regard, the Court would need to consider, *inter alia*, the

---

[4] "Assigned" could mean a lot of things. Does it mean Credit Acceptance's records show the number as belonging to an accountholder? Or perhaps the cell provider's records reflect the number as belonging to a Credit Acceptance accountholder? Or maybe that the accountholder is the subscriber or regular user? Just these few examples would necessitate individualized determinations by this Court.

circumstances of how each Credit Acceptance "accountholder" may have provided the applicable phone number to Credit Acceptance when establishing their account, such that they could have provided "prior express consent" within the meaning of the TCPA to call that number in relation to their account, and if they had authority to provide such consent. These issues strike directly at the heart of the underlying claim, as non-marketing calls (like the one alleged here) made with the recipient's "prior express consent" do not violate Section 227(b) of the TCPA. *See* 47 C.F.R. § 64.1200(a)(1). Yet, how a particular phone number may have been "assigned" to an "accountholder" or how anyone may have provided their phone number (or perhaps someone else's number) to Credit Acceptance when setting up an account, and thus possibly provided "prior express consent" to receive calls about their account, are all issues that can vary <u>considerably</u> depending on the persons involved or the circumstances. All this will <u>necessarily</u> require this Court to make countless individualized determinations on those key issues, no matter what discovery shows.

Indeed, "prior express consent" under the TCPA can be simply obtained where a consumer provides their number to a caller as part of a transaction or inquiry. *See, e.g., Hill v. Homeward Residential, Inc.,* 799 F.3d 544, 551 (6th Cir. 2015); *Dolemba v. Kelly Servs., Inc.,* 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017) (citing 30 FCC Rcd. at 7961); *Pietzak v. Microsoft Corp.*, 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015). *See also Gorss Motels, Inc. v. Safemark Sys., LP,* 931 F.3d 1094, 1101

-22-

(11th Cir. 2019) (parties do not need "magic words" to establish TCPA consent). And authorized users of a phone number, not merely the primary subscriber or user, can provide consent to be contacted under the TCPA. *Cf. Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 565 (W.D. Wash. 2012) ("authorized user" of a phone number has TCPA statutory standing even if that person is not the "primary account holder").

The latter is what Plaintiff suggests may have occurred here, as her FAC alleges she "did not give Cornelius permission or consent to provide her cellular telephone number to third parties" or Credit Acceptance. ECF No. 12, ¶¶ 36-37, PageID.80. As a matter of law, however, just because a phone number is "not assigned to a Credit Acceptance Corporation accountholder" does not mean that there is no consent to call it—for example, an authorized user of the number may have provided it when setting up an account. Further, Plaintiff's alleged number <u>is</u> apparently "assigned" to an "accountholder" ("Cornelius"), and he may have provided consent to call that number when he set up his account using it, per Plaintiff's own allegations. Such could be true for countless (if not all) other members of the proposed class. In the end, sorting all this out will undoubtedly require many individualized determinations from this Court, which precludes certification here on predominance grounds.

In sum, there are innumerable ways "prior express consent" can be given by or to any one person as Plaintiff's own allegations show. And as the Sixth Circuit noted, "[t]he **context of the consent provided is critical**" in a TCPA case. *Baisden v. Credit*

*Adjusts., Inc*., 813 F.3d 338, 343 (6th Cir. 2016) (emphasis added). *See also Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) ("[T]he predominant issue of fact [in TCPA cases] is undoubtedly one of ***individual*** consent." (emphasis in original)). Whether or how anyone may have had an account with and provided a phone number to Credit Acceptance, such that they gave "prior express consent" under the TCPA to call the number, are <u>not</u> common questions of law or fact that can be resolved by generalized proof across the entire class in a single adjudication. Instead, countless individualized inquires on these key issues <u>will</u> be needed. Therefore, Plaintiff's class definition should be stricken on predominance grounds.

The same reasons that render Plaintiff unable to meet the predominance requirement make her proposed class definition impermissibly "fail-safe" as pled and, as such, properly stricken. *See, e.g., Boyer v. Diversified Consultants, Inc.,* 306 F.R.D. 536, 540 (E.D. Mich. 2015) (holding TCPA class composed of people who did not provide "prior express consent" to be contacted was an improper fail-safe class). A proposed class definition is impermissibly fail-safe in violation of Rule 23—and thus it may also be stricken under Rule 12(f)—where, as here, the Court must make a determination on the merits of the class members' individual claims to determine membership. *See, e.g., Sauter,* 2014 WL 1814076, at *4; *Lindsay*, 2013 WL 275568, at *4. Such a faulty proposed class definition constitutes an "independent ground for denying class certification" because it "shields the putative class members from

-24-

receiving an adverse judgment" and "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir. 2011).

In TCPA cases, federal courts have often stricken class allegations on this basis where the court would need to determine the merits of the class members' claims— *i.e.,* whether they consented to receive allegedly "prerecorded" calls—to determine membership. *See, e.g., Boyer,* 306 F.R.D. at 540, *see also Sauter,* 2014 WL 1814076, at *8-9; *Pepka*, 2016 WL 8919460, at *4; *Lindsay Transmission, LLC,* 2013 WL 275568, at *4. Given how Plaintiff's proposed class is pled, which would only include members with valid claims and who did not consent, this Court rule similarly here.

Finally, with Plaintiff's underlying claim dismissed and/or her class definition stricken for the myriad reasons above, any remaining class-related allegations in the FAC are immaterial and should also be stricken under Rule 12(f). *See, e.g., Blount v. D. Canale Beverages, Inc.*, 2003 WL 22890339, at *8 (W.D. Tenn. July 23, 2003).

## <u>CONCLUSION</u>

For all of the reasons stated above, and as may be subsequently provided to the Court, the FAC should be dismissed with prejudice and/or the class allegations should be stricken, and Credit Acceptance should be granted all other just relief.

Dated: June 12, 2025        Respectfully submitted,

                                    By: /s/ A. Paul Heeringa
                                    *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 12, 2025, I filed the foregoing electronically through the Court's CM/ECF system, which caused the following parties or counsel to be served by electronic means on all parties and their respective counsel of record.

<u>*s/ A. Paul Heeringa*</u>

A. Paul Heeringa

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY CARR, on behalf of
herself and others similarly situated

     Plaintiff,

v.

CREDIT ACCEPTANCE CORP.,

     Defendant.

Case No. 2:25-cv-10985-LJM-CI
Honorable Laurie J. Michelson

---

## BRIEF FORMAT CERTIFICATION FORM

I, A. Paul Heeringa, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

    ☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

    ☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

    ☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

    ☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

    ☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

    ☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

    ☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

-27-

Dated: June 12, 2025                    Respectfully submitted,


By: /s/ A. Paul Heeringa                

***Counsel for Defendant***