# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY CARR, on behalf of herself and others similarly situated, | Case No.: 2:25-cv-10985-LJM-CI |
| Plaintiff, | Honorable Laurie J. Michelson |
| v. | Magistrate Judge Curtis Ivy, Jr. |
| CREDIT ACCEPTANCE CORPORATION, | |
| Defendant. | |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CERTAIN ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT

1

This Court should deny Credit Acceptance Corporation's ("Credit Acceptance") motion to dismiss and/or strike certain allegations from Kimberly Carr's First Amended Complaint, ECF No. 13, for multiple reasons.

1.     First, Ms. Carr more than adequately alleges that Credit Acceptance used an artificial or prerecorded voice in connection with its calls to her. She does so by quoting one of the messages she received in its entirety, explaining how she listened to the voice message to determine it was not left by a live person, and describing its generic nature and monotone voice. Ms. Carr also provides a link to a message received by another person from Credit Acceptance that is identical in sound and substance to the first sentence of one of the messages she received. Taken cumulatively, Ms. Carr more than sufficiently alleges the use of an artificial or prerecorded voice. *See, e.g.*, *See Champman v. Nat'l Health Plans & Benefits Agency, LLC*, 619 F. Supp. 3d 788, 796 (E.D. Mich. 2022) (Michelson, J.) (denying motion to dismiss TCPA claims and noting that "while some factual details are required, courts have made clear that properly pleading a prerecorded message is a low bar.")

2.     Second, Ms. Carr adequately alleges that Credit Acceptance knowingly or willfully violated the Telephone Consumer Protection Act ("TCPA"). In particular, Ms. Carr alleges that Credit Acceptance knowingly used an artificial or prerecorded voice in connection with its calls to her, willfully placed those calls

without the requisite consent, and continued placing calls to her after being specifically informed it was calling the wrong number. *See Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 896-97 (E.D. Mich. 2012) (finding the defendant liable for knowing or willful violations of the TCPA for calls placed after the defendant was informed it was calling the wrong number).

3.     Third, Ms. Carr properly brings her claim on behalf of a proposed class. Credit Acceptance's request to strike Ms. Carr's class allegations at the pleading stage is a drastic remedy that is strongly disfavored. This is particularly so where courts routinely certify TCPA class actions like this one based on prerecorded calls to wrong or reassigned cellular telephone numbers. What's more, Credit Acceptance's central argument—that its supposed prior express consent defense will cause individualized issues to predominate—is speculative and premature because prior express consent is an affirmative defense for which a defendant bears the burden of proof. Credit Acceptance has yet to answer Ms. Carr's amended complaint or assert any affirmative defenses, let alone the defense of prior express consent. And it certainly has not established that it obtained prior express consent from anyone to place calls to Ms. Carr's cellular telephone number. Simply, hypothetical defenses cannot defeat class certification, and do not justify striking allegations at the pleading stage. *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119,

1126 (6th Cir. 2016) ("We hold that the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3).").

4.      Finally, Ms. Carr withdraws her request for injunctive relief.

As set forth more fully in Ms. Carr's contemporaneously filed memorandum of law, this Court should deny Credit Acceptance's motion. ECF No. 13.

RESPECTFULLY SUBMITTED AND DATED this July 1, 2025.

*s/ Michael L. Greenwald*
Michael L. Greenwald
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone:  (561) 826-5477
Email:  mgreenwald@gdrlawfirm.com

Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Email:  anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KIMBERLY CARR, on behalf of
herself and others similarly situated,

                Plaintiff,

      v.

CREDIT ACCEPTANCE
CORPORATION,

                Defendant.

Case No.: 2:25-cv-10985-LJM-CI

Honorable Laurie J. Michelson

Magistrate Judge Curtis Ivy, Jr.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CERTAIN ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Introduction ...................................................................................................1

Relevant Facts ..............................................................................................3

Legal Standard .............................................................................................5

Argument.......................................................................................................6

I.  Ms. Carr states a claim under the TCPA...........................................6

A.  Ms. Carr adequately alleges the use of an artificial or prerecorded voice. .....7

B.  Ms. Carr adequately alleges knowing or willful violations of the TCPA that support her request for treble damages. .................................................13

II.  Ms. Carr adequately alleges claims on behalf of a proposed class...................15

A.  Motions to strike class allegations are a drastic remedy and particularly disfavored........................................................................................15

B.  District courts routinely certify TCPA class actions like this one. ..............18

C.  Credit Acceptance's fact-specific arguments against certification are inappropriate on a motion to strike the amended complaint's allegations. .............20

D.  Even if Ms. Carr proposed a flawed class definition—she did not—striking Ms. Carr's class allegations at this stage is inappropriate. ....................................24

Conclusion ...................................................................................................25

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Champman v. Nat'l Health Plans & Benefits Agency, LLC*, 619 F. Supp. 3d 788 (E.D. Mich. 2022).

*Barry v. Firstsource Sols. USA, LLC*, No. 3:24-CV-648-GNS, 2025 WL 1762289 (W.D. Ky. June 25, 2025).

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016).

*Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGL, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025).

## Introduction

This proposed class action arises from robocalls Credit Acceptance Corporation ("Credit Acceptance") made to Kimberly Carr and others who are *not* its alleged debtors, who do not owe any money to Credit Acceptance, and who did not consent. Of course, contempt for these ubiquitous robocalls is one of the few things we all share: "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020). And calls like these, where Credit Acceptance sought money from those who did not owe it, are particularly pernicious.

Because Ms. Carr alleges that Credit Acceptance placed calls to her cellular telephone, in connection with which it used an artificial or prerecorded voice, she states a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii).

Notwithstanding, Credit Acceptance suggests that Ms. Carr fails to adequately allege the use of an artificial or prerecorded voice. But in doing so, Credit Acceptance largely ignores Ms. Carr's well-pleaded allegations.

Far from pleading legal conclusions, Ms. Carr details how she listened to Credit Acceptance's artificial or prerecorded voice messages and how the tone and pattern of speech was inconsistent with live speech. At the same time, Ms. Carr cites an online complaint regarding the same message she received. Not only are the tone,

voice, and content identical, but playing the recording makes clear that it is not a live caller. Tellingly, Credit Acceptance fails to substantively address whether this recording is of an artificial or prerecorded voice because, undoubtedly, it is. At bottom, Credit Acceptance overstates the pleading requirements under Rule 8(a)(2) and Ms. Carr adequately alleges the use of an artificial or prerecorded voice. *See Champman v. Nat'l Health Plans & Benefits Agency, LLC*, 619 F. Supp. 3d 788, 796 (E.D. Mich. 2022) (Michelson, J.) (denying motion to dismiss TCPA claims and noting that "while some factual details are required, courts have made clear that properly pleading a prerecorded message is a low bar.").

Credit Acceptance's request that this Court strike Ms. Carr's class allegations fares no better. Ms. Carr's class claims are not "facially uncertifiable" as a matter of law. Rather, her TCPA claim is eminently suitable for class treatment and numerous courts have certified materially identical class actions stemming from prerecorded calls to wrong or reassigned cellular telephone numbers.

More fundamentally, Credit Acceptance does not limit its challenge to Ms. Carr's allegations, as is required on a motion to strike. Rather, and far beyond the four corners of her amended complaint, Credit Acceptance maintains that issues of prior express consent will preclude class certification. But prior express consent of a called party is an affirmative defense for which a TCPA defendant bears the burden of proof. At this stage, Credit Acceptance has not answered Ms. Carr's amended

complaint, nor has it asserted any defenses—let alone the defense of prior express consent. But even if it had, there is nothing in the amended complaint suggesting that Credit Acceptance obtained prior express consent to deliver artificial or prerecorded voice messages to anyone. Hypothetical or speculative defenses cannot defeat class certification, and do not justify the extraordinary remedy of striking a complaint's allegations at this early stage.

For these reasons, this Court should deny Credit Acceptance's motion to dismiss and to strike. ECF No. 13.

## Relevant Facts

Ms. Carr is, and has been since approximately October 2024, the sole and customary user of and subscriber to her cellular telephone number—(XXX) XXX-1963. *See* Plaintiff's First Amended Class Action Complaint, ECF No. 12, PageID.77, ¶ 13.

Credit Acceptance began placing calls to (XXX) XXX-1963 in March 2025, or earlier. *Id.*, ¶ 14. Credit Acceptance used an artificial or prerecorded voice in connection with these calls. *Id.*, ¶ 17.

Ms. Carr received and listened to the artificial or prerecorded voice messages Credit Acceptance delivered. ECF No. 12, PageID.81, ¶ 48. By way of example, on March 4, 2025, Credit Acceptance placed a call to telephone number (XXX) XXX-

1963. ECF No. 12, PageID.77, ¶ 18. In connection with this March 4, 2025 call, Credit Acceptance delivered an artificial or prerecorded voice message. *Id*.

The artificial or prerecorded voice message Credit Acceptance delivered to Ms. Carr's cellular telephone on March 4, 2025 stated:

> Please call Credit Acceptance at 1-800-634-1506 or you can visit us online at www.creditacceptance.com to make a payment or access account information. Our hours of operation are Monday to Friday from 8:00 a.m. to 11 p.m. Saturday and Sunday 8 a.m. to 5 p.m. Eastern Time. Thank you.

*Id*.

The March 4, 2025 artificial or prerecorded voice message (1) was generic in nature, (2) had a monotone voice, (3) had a tone and speech pattern inconsistent with live, human speech, (4) was impersonal, and (5) was consistent with a message that is artificial or prerecorded in nature. ECF No. 12, PageID.77-78, ¶¶ 19-22. Indeed, by listening to the message, Ms. Carr readily identified the message as prerecorded and not live speech. ECF No. 12, PageID.78, ¶ 23.

What's more, other consumers have received identical voice messages from Credit Acceptance. *Id*., ¶ 24; *see* https://lookup.robokiller.com/p/628-222-7839.[1]

Separately, Ms. Carr spoke with one of Credit Acceptance's representatives and informed Credit Acceptance that it was calling the wrong number. ECF No. 12,

---

[1]    Using this link, the Court can play a voice message from Credit Acceptance that is identical in tone, sound, and content to the first sentence of the message Credit Acceptance delivered to Ms. Carr on March 4, 2025.

PageID.80, ¶ 42. Notwithstanding Credit Acceptance's apology to Ms. Carr, Credit Acceptance continued placing calls to (XXX) XXX-1963. *Id.*, ¶¶ 43-44.

Ms. Carr brings her TCPA claim on behalf of herself and others similarly situated. ECF No. 12, PageID.81, ¶ 51.

## Legal Standard

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), it is axiomatic that "[t]he complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff." *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975, 990 (E.D. Mich. 2017).[2]

Equally axiomatic is that "[w]hen deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must not consider matters outside of the pleadings." *Galaxy Foods LLC v. Aryz Trading LLC*, No. 23-cv-11476, 2023 WL 8025818, at *4 (E.D. Mich. Nov. 20, 2023). As a result, this Court must disregard Credit Acceptance's unfounded suggestions that it had prior express consent to place calls in some circumstances. *See* ECF No. 13, PageID.119, 121 (numerous factual assertions not found within, nor referenced by, the amended complaint).

---

[2]    Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

## Argument

### I.    Ms. Carr states a claim under the TCPA.

"The TCPA is the product of public outrage over abusive telephone marketing practices." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 341 (6th Cir. 2023). "By the time it was enacted in 1991, companies had begun to use technology that could automatically dial telephone numbers and deliver prerecorded voice messages to potential consumers en masse—reportedly to more than 18 million Americans each day." *Id*. "Consumers more generally criticized these robocalls as invasions of privacy regardless of the content or the initiator of the message. Congress agreed." *Id*.

Ms. Carr alleges Credit Acceptance violated 47 U.S.C. § 227(b)(1)(A)(iii), which provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) by using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> \*       \*       \*
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii).

In short, this provision "prohibits making any call, to any telephone number, using any automatic telephone dialing system or an artificial or prerecorded voice absent an emergency or the recipient's prior express consent." *Dickson*, 69 F.4th at 341.[3]

### A. Ms. Carr adequately alleges the use of an artificial or prerecorded voice.

In suggesting that Ms. Carr fails to allege the use of an artificial or prerecorded voice, Credit Acceptance misconstrues the pleading standard under Rule 8(a)(2). Credit Acceptance also ignores the lion's share of Ms. Carr's allegations.

To start, allegations of the use of an artificial or prerecorded voice are allegations of fact, not legal conclusions. *See, e.g.*, *Vaccaro v. CVS Parm., Inc.*, No. 13-CV-174-IEG (RBB), 2013 WL 3776927, at *2 (S.D. Cal. July 16, 2013) (denying motion to dismiss TCPA claims and noting "[t]hat the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion."); *accord Bonoan v. Adobe, Inc.*, 19-cv-01068-RS (SK), 2019 WL 5690631, at *1 (N.D. Cal. Oct. 29, 2019) ("The term 'artificial or prerecorded voice' does not call for a legal conclusion . . . . Determining whether a voice is artificial or prerecorded does not require legal analysis.").

---

[3]     There is no dispute that Ms. Carr enjoys Article III standing to bring her claims in this Court. *See id.* at 343 ("Here, we find that Dickson's claims satisfy the demands of Article III because his alleged injury under the TCPA constitutes a concrete harm.").

So while "even a legal conclusion couched as a factual allegation is insufficient on its own because, however disguised, it remains a legal conclusion[,]" "[f]actual allegations do not cease to be factual even if they quote a statute's language." *Vaccaro*, 2013 WL 3776927, at *2 ("For instance, allegation of a telephone call remains factual even though the word 'call' is found in the TCPA."); *see also Mata v. Veros Credit, LLC*, No. SA CV 16-8-DOC (JCGx), 2017 WL 2644633, at *4 (C.D. Cal. Jan. 20, 2017) ("That the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion.").

Here, Ms. Carr alleges that Credit Acceptance placed calls to her using an artificial or prerecorded voice. ECF No. 12, PageID.76-77, 79, 81-82, 85, ¶¶ 6, 12, 17-24, 30, 33, 47-49, 58, 81. These allegations are more than sufficient. *See, e.g.*, *Rahn v. Bank of Am., N.A.*, No. 1:15-cv-4485-ODE-JSA, 2016 WL 7325657, at *4 (N.D. Ga. June 26, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message. . . . Thus, that Plaintiff states he received calls containing 'prerecordings' is a factual allegation for purposes of the pleading standards, and not a bare legal conclusion.").

Second, and far from "bald conclusory statements and regurgitations of the statute and applicable case law," ECF No. 13, PageID.99, Ms. Carr details why she knows the calls were artificial or prerecorded in nature:

- Ms. Carr listened to the voice messages Credit Acceptance delivered to her cellular telephone. ECF No. 12, PageID.78, ¶ 48; PageID.81, ¶ 48;

- The messages were generic. ECF No. 12, PageID.78, ¶ 18;

- The robotic sound of the messages strongly indicates the use of an artificial or prerecorded voice. *Id.*, ¶ 19;

- The pattern and tone of the speech are consistent with a message that is artificial or prerecorded in nature, and inconsistent with live speech. ECF No. 12, PageID.78, ¶ 20;

- The messages had a monotone voice. *Id.*, ¶ 21.

- The messages were impersonal and did not identify any specific recipient. *Id.*, ¶ 22.[4]

Were that not enough, other consumers received messages from Credit Acceptance identical in content, speech pattern, and tone to that received by Ms. Carr. ECF No. 12, PageID.78, ¶ 24; *see https://lookup.robokiller.com/p/628-222-7839* (containing recording of voice message identical to the first sentence of the March 4, 2025 message delivered to Ms. Carr).[5]

---

[4]     Contrary to Credit Acceptance's suggestion, that Ms. Carr spoke to Credit Acceptance and informed Credit Acceptance that it was calling the wrong number does not negate that Credit Acceptance placed calls to Ms. Carr with an artificial or prerecorded voice. To be sure, calling technology can recognize when a human answers and then transfer a call to a live operator. If no person answers, a prerecorded message can be left. Alternatively, that Credit Acceptance may have placed a call to Ms. Carr with a live person has no bearing on different calls Credit Acceptance placed to her with an artificial or prerecorded voice, like the March 4, 2025 call specifically alleged in Ms. Carr's amended complaint.

[5]     Tellingly, Credit Acceptance does not dispute that the recording found at *https://lookup.robokiller.com/p/628-222-7839* is artificial or prerecorded in nature. This is because listening to the message makes plain that it was not delivered live by

Taken together, these allegations are more than sufficient to plead the use of an artificial or prerecorded voice. *See, e.g.*, *Taylor v. Kin Ins., Inc.*, No. 25-cv-213, 2025 WL 1651524, at *2 (N.D. Ill. June 10, 2025) ("Defendant points out that Plaintiff omits certain details, such as full transcripts of the voicemails received, the total number of calls received, and whether Plaintiff answered or otherwise spoke to anyone on the calls. While Plaintiff could have alleged these additional facts, they are not necessary to plausibly state a TCPA claim."); *Van Baalen v. Mut. of Omaha Ins. Co.*, 729 F. Supp. 3d 1239, 1249 (D.N.M. 2024) ("Plaintiff's allegations sufficiently draw the inference that a prerecorded voice was used. He states that 'on several occasion' the Jane Doe callers 'left a generic, standardized prerecorded message in Plaintiff's phone's voice-mail,' which is sufficient to support an inference that Plaintiff received identical, prerecorded calls."); *Cabral v. Penske Truck Leasing Co. LP*, No. 1:23-cv-01316, 2024 WL 1916701, at *6 (M.D. Pa. May 1, 2024) ("Unlike cases dismissing TCPA claims because the plaintiff, 'has not pled any facts relative to an automatic telephone dialing system or to an artificial or prerecorded voice,' Mr. Cabral has made at least some factual statements supporting his allegation that Penske contacted him using a prerecorded message. . . . The Court therefore concludes that, at this early stage of the litigation, Mr. Cabral's allegations

---

a person. And because that message is identical to the first sentence of the March 4, 2025 voice message Credit Acceptance delivered to Ms. Carr, that message necessarily is artificial or prerecorded in nature.

are sufficient for his TCPA claim to survive."); *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *3 (E.D. Pa. July 21, 2021) ("The Complaint therefore does not merely repeat the language of the TCPA, but instead provides a description, albeit minimal, of the calls' content that extends beyond the language of the statute. Drawing all reasonable inferences in Plaintiffs' favor, we find the description of the calls' options menu and 'computerized' voice sufficient to plausibly allege that the calls used an artificial or prerecorded voice."); *Greene v. Select Funding, LLC*, No. 2:20-cv-07333-RGK-KS, 2021 WL 4926495, at *4 (C.D. Cal. Feb. 5, 2021) ("Plaintiff alleges that he knew that caller he spoke with on April 10 was a pre-recorded message based on the speaker's 'content, tone and inflection,' 'the generic content of the voice message,' and the speaker's cadence. These allegations survive a motion to dismiss.").

This Court's decision in *Chapman* is instructive. 619 F. Supp. 3d at 797. There, this Court found the plaintiff "has provided a sufficient level of additional detail such that she plausibly alleged that NHP used a prerecorded voice in its calls to her," in part because, like here, the "complaint presents additional facts beyond the bare assertion that there was an automated call, principally the content of the automated call." *Id.* Likewise, Ms. Carr presents the content of the March 4, 2025 call in full, as well as additional details demonstrating that Credit Acceptance's calls were artificial or prerecorded in nature. Credit Acceptance's insistence that Ms. Carr

provide even more detail is misplaced because "[t]he pleading standard is not that rigid." *See id*.

> Other courts in this circuit agree:
>
> Barry's Complaint certainly meets the threshold required to survive a motion to dismiss. She states that the calls seemed to be artificial or prerecorded in nature because the tone and intonation of the caller were unnatural and did not reflect live speech. (Compl. ¶¶ 17-20, 25-28). Barry also notes that Oliver's name was said in a distinct manner that sounded different than the rest of the prerecorded message. (Compl. ¶¶ 20, 28-22). Barry plainly offers allegations regarding the use of prerecorded and artificial language used in the calls as required by the TCPA. *See Lucas*, 2019 WL 3021233, at *5 (citations omitted). Firstsource argues that Barry fails to state "which technology was used[,]" "provide sufficient contextual details[,]" or differentiate between a "generic" and "identical" message. (*See* Def.'s Mot. Dismiss 15-18). Ultimately, this is a higher standard than is necessary for Barry's allegations to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. The motion to dismiss is denied for this reason as well.

*Barry v. Firstsource Sols. USA, LLC*, No. 3:24-CV-648-GNS, 2025 WL 1762289, at *3 (W.D. Ky. June 25, 2025).

It is not surprising, then, that the decisions Credit Acceptance cites do not involve complaints with anywhere near the level of factual detail Ms. Carr provides. *See, e.g.*, *Manopla v. Sansone Jr.'s 66 Automall*, No. 17-16522 (FLW) (LHG), 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020) ("As presently alleged, Plaintiff's Complaint is devoid of facts from which the Court could reasonably infer that a pre-recorded message was utilized; in fact, Plaintiff's Complaint is bereft of any allegations regarding the tenor, nature, or circumstances of the alleged calls.");

*Curry v. Synchrony Bank, N.A.*, No. 1:150CV0322-LG-RHW, 2015 WL 7015311, at \*2 (S.D. Miss. Nov. 12, 2015) (alleging no facts other than that calls were "automated").

### B. Ms. Carr adequately alleges knowing or willful violations of the TCPA that support her request for treble damages.

A court may award treble damages if a TCPA defendant "willfully or knowingly" violated the Act. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 157 (2016) (citing 47 U.S.C. § 227(b)(3)).

Ms. Carr alleges that (1) Credit Acceptance "routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with non-emergency calls it places to telephone numbers assigned to a cellular telephone service, without prior express consent," ECF No. 12, PageID.75, ¶ 2; (2) Credit Acceptance routinely uses an artificial or prerecorded voice in connection with non-emergency calls it places to individuals who did not provide their telephone numbers to Credit Acceptance and who do not have an account with Credit Acceptance, *id*., ¶ 3; (3) she does not have, nor did she ever have, an account or business relationship with Credit Acceptance, ECF No. 12, PageID.80, ¶¶ 38-39; (4) she did not provide her telephone number to Credit Acceptance, nor did she provide Credit Acceptance with consent to place calls to her cellular telephone with an artificial or prerecorded voice, *id*., ¶¶ 40-41; (5) Credit Acceptance had knowledge it was using an artificial or prerecorded voice in connection with calls it placed to Ms. Carr, ECF No. 12,

13

PageID.81, ¶ 47; and (6) Ms. Carr suffered actual harm as a result of Credit Acceptance's subject calls, in connection with which it used an artificial or prerecorded voice, in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance, *id*., ¶ 49.

Taken collectively, these allegations sufficiently allege willful or knowing violations of the TCPA. *See, e.g.*, *Smith v. Assurance IQ, LLC*, No. 22-cv-01732-PHX-GMS, 2023 WL 8076099, at *3 (D. Ariz. Nov. 21, 2023) ("As shown above, a combination of allegations like those in Plaintiff's First Amended Complaint (Doc. 13) are sufficient to withstand a motion to dismiss. Thus, Plaintiff's allegations, accepted as true for the purposes of this motion, 'raise a right to relief above the speculative level' that Defendant willfully and knowingly violated the TCPA.").

What's more, Credit Acceptance continued placing calls to Ms. Carr after she informed Credit Acceptance that it was calling the wrong number and after Credit Acceptance apologized for its unwanted calls. ECF No. 12, PageID.80, ¶¶ 42-43. These calls undoubtedly constitute knowing or willful violations of the TCPA. *See, e.g.*, *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 896-97 (E.D. Mich. 2012) (finding the defendant liable for knowing or willful violations of the TCPA for calls placed after the defendant was informed it was calling the wrong number); *accord Duchene v. Onstar, LLC*, No. 15-13337, 2016 WL 3997031, at *7 (E.D. Mich. July 26, 2016) ("Accordingly, the Court holds that a willful or knowing

violation of TCPA requires that Plaintiff has to plead that Defendant was made aware of/notified that Plaintiff did not consent to calls from Defendant.").

## II. Ms. Carr adequately alleges claims on behalf of a proposed class.

### A. Motions to strike class allegations are a drastic remedy and particularly disfavored.

While a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), "[m]otions to strike class allegations are particularly disfavored because it is rarely easy to determine before discovery whether the allegations are meritorious." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016) (denying motion to strike class allegations); *accord Geary v. Green Tree Servicing, LLC*, No. 2:14-cv-00522, 2015 WL 1286347, at *17 (S.D. Ohio Mar. 20, 2015) ("While the Court *may* strike class allegations prior to a motion to certify, the Court declines to do so at this early stage. The Court deems it prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage.") (emphasis in original).[6]

---

[6] Whether it is ever proper to strike class allegations under Rule 12(f) is an open question:

> Not only are Rule 12(f) motions to strike "viewed with disfavor" and "not frequently granted," *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015), but the text of Rule 12(f) provides that a motion to strike may only be

Indeed, "[m]otions to strike are a drastic remedy and generally disfavored." *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040, at *1 (D. Ariz. Jan. 12, 2023) (denying motion to strike TCPA class allegations and noting "this is not a close call[.]"); *see also Walker v. Cedar Fair, L.P.*, 347 F.R.D. 33, 35 (N.D. Ohio 2024) ("Moreover, Rule 12(f) motions present a 'drastic remedy to be resorted to only when required for the purposes of justice.' *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). Defendants have not set forth any reasons why I should undertake this 'drastic remedy' at this stage of the case, as opposed to when the issue becomes ripe, *i.e.*, when I rule on class certification as a whole.").[7]

---

       directed at "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." These limited categories do not map neatly onto a class allegation. Such an allegation is not a defense, is not redundant, is not impertinent, and is not scandalous. At most, it might be said that a facially deficient class allegation is "immaterial," but even that is something of a stretch.

*Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2022 WL 279576, at *3 (D. Ariz. Jan. 31, 2022) (denying motion to strike TCPA class allegations).

[7]    *See also, e.g.*, *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1106 (D. Ariz. 2024) (denying motion to strike TCPA class action allegations); *Kennedy v. FHIA, LLC*, No. 6:24-cv-246-JSS-EJK, 2024 WL 4989339, at *1 (M.D. Fla. Dec. 5, 2024) (same, and referring to the defendant's request as seeking a "drastic remedy"); *Newman v. Direct Energy, LP*, No. GJH-21-2446, 2022 WL 4386235, at *8 (D. Md. Sept. 22, 2022) ("The parties before this Court have not engaged in discovery and the Court has not had the opportunity to evaluate the evidence under its own legal standards, and as such cannot strike or dismiss the class allegations at this stage.");

Ultimately, and "[p]articularly in the context of a class action suit, striking class allegations prior to discovery and the class certification stage is a rare remedy because it is seldom, if ever, possible to resolve class representation question[s] from the pleadings alone." *Legacy Gymnastics, LLC, v. ARCH Ins. Co.*, No. 2:20-cv-04214-NKL, 2021 WL 2371503, at *2 (W.D. Mo. June 9, 2021) (denying motion to strike class allegations).[8] Because Credit Acceptance does not carry its heavy burden for the "drastic remedy" it seeks, this Court should deny its motion to strike.

---

*McCall Law Firm, PLLC v. Crystal Queen, Inc.*, 335 F. Supp. 3d 1124, 1133 (E.D. Ark. 2018) (denying as premature motion to strike TCPA class allegations); *Bietsch v. Sergeant's Pet Care Prod., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *9 n.11 (N.D. Ill. Mar. 15, 2016) ("Although Sergeant's has filed a motion to strike class allegations, as discussed below, that motion is also premature, as plaintiffs have not had the opportunity to pursue class discovery and it is not apparent from the pleadings that the class allegations are deficient."); *Fitzhenry v. Career Educ. Corp.*, No. 14-CV-10172, 2016 WL 792312, at *5 (N.D. Ill. Mar. 1, 2016) (denying motion to strike TCPA class claims because all arguments advanced are "speculative" and "premature"); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, No. 4:15-CV-517 RLW, 2015 WL 9451046, at *2 (E.D. Mo. Dec. 23, 2015) (denying motion to strike TCPA class allegations); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 299 (N.D. Ill. 2014) ("the Court rejects Optimum's predominance and commonality arguments as premature. . . . Buonomo must have the opportunity to conduct discovery regarding what evidence that exists before the Court can determine whether certification of a 'wrong party' class is appropriate in this case.").

[8] For this reason, many of the decisions Credit Acceptance cites are inapposite because they addressed fully briefed motions for class certification after an opportunity for discovery and on a developed record. *See, e.g.*, *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255 (M.D. Fla. 2019); *Trenz v. On-Line Admins., Inc.*, No. 2:15-cv-08356-JLS-KS, 2020 WL 5823565 (C.D. Cal. Aug. 10, 2020). The salient question here is not whether this Court ultimately will certify Ms. Carr's proposed class, but whether it will be impossible for Ms. Carr to certify a class no matter what discovery reveals.

**B. District courts routinely certify TCPA class actions like this one.**

As Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").

And this remains true for "wrong number" TCPA class actions like this one. *See, e.g.*, *Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGL, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025) (certifying TCPA class defined nearly identically to Ms. Carr's proposed class here); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (certifying TCPA class); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same); *accord Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021) (denying a motion to decertify a "wrong number"

18

TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017

WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying two "non-debtor" TCPA classes).

More particularly, Ms. Carr's proposed class definition here closely tracks the

certified class definitions in *Elliott* and *Head*:

> Ms. Carr's proposed class: All persons and entities persons throughout
> the United States (1) to whom Credit Acceptance Corporation placed a
> call, (2) directed to a number assigned to a cellular telephone service,
> but not assigned to a Credit Acceptance Corporation accountholder, (3)
> with an artificial or prerecorded voice, (4) from April 8, 2021 through
> the date of class certification.

ECF No. 12, PageID.81, ¶ 51.

> Certified class in *Elliott*: All persons or entities throughout the United
> States (1) to whom Humana placed, or caused to be placed, a call (2)
> directed to a number assigned to a cellular telephone service, but not
> assigned to a current account holder of Humana or person who
> consented to receive calls on behalf of an account holder (3) in
> connection with which Humana used an artificial or prerecorded voice,
> (4) four years from the filing of this action through the date of class
> certification.

*Elliott*, 2025 WL 1065755, at *14.

> Certified class in *Head*: All persons and entities throughout the United
> States (1) to whom Citibank, N.A. placed a call in connection with a
> past-due credit card account, (2) directed to a number assigned to a
> cellular telephone service, but not assigned to a current or former
> Citibank, N.A. customer or authorized user, (3) via its Aspect dialer and
> with an artificial or prerecorded voice, (4) from August 15, 2014
> through the date of class certification.

*Head*, 340 F.R.D. at 157.

Given (1) the nearly complete overlap between the proposed class definition

here and the certified classes in *Elliott* and *Head* (and others), (2) that multiple

certified TCPA classes include the "assigned" language that Credit Acceptance protests, and (3) the regularity with which courts certify materially similar TCPA classes, attaining class certification here is far from impossible. *See Jaffery v. Health Ins. Plan of Greater N.Y.*, No. 1:23-cv-522 (BKS/DSJ), 2024 WL 4223740, at *4 (N.D.N.Y. Sept. 18, 2024) (denying motion to strike TCPA class allegations because, in part, "courts have certified numerous class actions like this one based on violations of the TCPA for calls to wrong or reassigned cellular telephone numbers."); *Drake v. Mirand Response Sys., Inc.*, No. 1:19-cv-01458-RLY-DML, 2020 WL 4218335, at *4 (S.D. Ind. July 22, 2020) (denying motion to strike similar class allegations in a proposed TCPA class action).

### C. Credit Acceptance's fact-specific arguments against certification are inappropriate on a motion to strike the amended complaint's allegations.

In contending that Ms. Carr's proposed class can never be certified, Credit Acceptance does not simply attack Ms. Carr's proposed class definition on its face. Rather, Credit Acceptance sets forth factual assertions that lack evidentiary support, and which are not found within Ms. Carr's amended complaint.

To start, "consent is an affirmative defense that a plaintiff is not required to plead in order to assert a TCPA claim." *Dahdah v. Rocket Mortgage, LLC*, No. 22-cv-11863, 2024 WL 4299564, at *6 (E.D. Mich. Sept. 26, 2024). And it is Credit Acceptance—not Ms. Carr—that bears the burden of proof to establish that it had

call recipients' prior express consent to place calls with an artificial or prerecorded voice. *Id.*

But Credit Acceptance has not answered the amended complaint, nor has it asserted any affirmative defenses at this juncture (let alone the affirmative defense of prior express consent). And it certainly has not established that it obtained express consent from anyone—including Ms. Carr—to deliver artificial or prerecorded voice messages. To the contrary, Ms. Carr specifically alleges that she did not provide such consent to Credit Acceptance. ECF No. 12, PageID.80, ¶¶ 38-41.

Given as much, a hypothetical or speculative defense of prior express consent has no relevance and cannot justify striking Ms. Carr's allegations (or denying class certification), as the Sixth Circuit addressed directly:

> We are unwilling to allow such "speculation and surmise to tip the decisional scales in a class certification ruling[,]" *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000), particularly under the circumstances present here. Our precedent is clear that a possible defense, standing alone, does not automatically defeat predominance. *See Young*, 693 F.3d at 544; *Beattie*, 511 F.3d at 564; *see also In re HCA Holdings, Inc.*, No. 14–0511, 2015 WL 10575861, at *2 (6th Cir. Feb. 26, 2015). Even where defendants point to some evidence that a defense will indeed apply to some class members, which is more than Top Flite did here, courts routinely grant certification because "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow v. Sw. Bell. Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *see also Avio, Inc.*, 311 F.R.D. at 437–46.

*     *     *

> We hold that the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3). *See Young*, 693 F.3d at 544; *Beattie*, 511 F.3d at 564. Holding otherwise and allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases "wide latitude to inject frivolous issues to bolster or undermine a finding of predominance." Robert G. Bone & David S. Evans, *Class Certification and the Substantive Merits*, 51 Duke L.J. 1251, 1269 (2002). In light of the foregoing, particularly the class-wide evidence Bridging Communities and Gamble presented showing an absence of consent, we hold that speculation alone regarding individualized consent was insufficient to defeat plaintiffs' showing of predominance under Rule 23(b)(3). The district court abused its discretion in holding otherwise in this case.

*See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125-26 (6th Cir. 2016).

To be sure, where a defendant has offered no evidence that consumers consented to receive calls, individual issues relating to consent do not predominate over common questions. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009) (TCPA defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals may have perchance consented to receiving the fax.").

For the same reasons, courts routinely deny identical motions to strike in TCPA cases. *See, e.g.*, *Whitsel v. LoanDepot.com, LLC*, No. 8:21-cv-1433-VMC-TGW, 2021 WL 4304778, at *2 (M.D. Fla. Sept. 22, 2021) ("the issue of whether Plaintiff's claim deserves class treatment is a fact-dependent inquiry unsuitable for a motion to dismiss or strike. Rather, this argument is better addressed at the class

certification stage after the parties have engaged in discovery."); *Rosenberg v. LoanDepot.com, LLC*, 435 F. Supp. 3d 308, 318 (D. Mass. 2020) ("The Court finds that the defendant's motion to strike the class allegations is premature before Plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings."); *accord Jackson v. Locust Medical, LLC*, No. 4:22-CV-00424, 2022 WL 16540675, at *3 (M.D. Pa. Oct. 28, 2022).

In any event, it is highly unlikely that consent will ever pose an issue in this case because Ms. Carr's proposed class is limited to persons without a Credit Acceptance account. *See N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) ("[W]e agree with our sister circuits. Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent.").

Because Credit Acceptance's arguments against class certification assume facts neither at issue nor for which supporting evidence exists to date, that are not found within the four corners of Ms. Carr's amended complaint, and that are based on an affirmative defense Credit Acceptance has not advanced, Credit Acceptance fails to justify the striking of Ms. Carr's class allegations. *See Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, 2016 WL 7179298, at *7-8 (N.D. Ind. Dec. 9, 2016) ("The role that evidence set forth by a defendant plays in resolving the

predominance inquiry presents an obstacle to CareSource's request to resolve this issue based on the plaintiff's complaint, and ultimately dooms its request to strike the class allegations at this stage.").

### D. Even if Ms. Carr proposed a flawed class definition—she did not—striking Ms. Carr's class allegations at this stage is inappropriate.

Also fatal to Credit Acceptance's motion to strike is that it rests on the "incorrect assumption that the class definition contained in a complaint dictates the precise contours of the class that may be certified." *Webb v. Circle K Stores Inc.*, No. CV-22-00716-PHX-ROS, 2022 WL 16649821, at *1 (D. Ariz. Nov. 3, 2022) (denying motion to strike class allegations in proposed TCPA class action). That is, even assuming Ms. Carr's proposed class definition has flaws—it does not—because Ms. Carr's "complaint gives adequate notice of the claim being asserted, the definition contained in the complaint does not dictate the exact class that can be certified, nor does it prevent modifications of the class definition after certification." *Id*. at *2.

In other words, "[t]he proper stage for fine-tuning the class definition is certification, not pleading." *Id*. at *3; *accord In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("Second, holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition.

District courts are permitted to limit or modify class definitions to provide the necessary precision.").

## Conclusion

This Court should deny Credit Acceptance's motion to dismiss in its entirety, with the exception of its request to dismiss Ms. Carr's request for injunctive relief, which Ms. Carr withdraws. *See* ECF No. 13, PageID.114.

In addition, this Court should refuse Credit Acceptance's request to strike Ms. Carr's class allegations. *Miles v. Medicredit, Inc.*, 526 F. Supp. 3d 487, 494 (E.D. Mo. 2021) ("Plaintiff should be given the opportunity to conduct discovery on class certification issues. This Court and others have reached similar conclusions.").

RESPECTFULLY SUBMITTED AND DATED this July 1, 2025.

*s/ Michael L. Greenwald*
Michael L. Greenwald
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone:  (561) 826-5477
Email:  mgreenwald@gdrlawfirm.com

Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Email:  anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| KIMBERLY CARR, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>CREDIT ACCEPTANCE CORPORATION,<br><br>        Defendant. | Case No.: 2:25-cv-10985-LJM-CI<br><br>Honorable Laurie J. Michelson<br><br>Magistrate Judge Curtis Ivy, Jr. |

---

**BRIEF FORMAT CERTIFICATION FORM**

---

I, Michael Greenwald, certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements, including the following (click each box to indicate compliance):

⊠ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

⊠ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

⊠ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

⊠ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

⊠ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

⊠ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

⊠ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

/s/ *Michael L. Greenwald*
Michael L. Greenwald
Attorney for Plaintiff

July 1, 2025