UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY CARR,

    Plaintiff,

v.

CREDIT ACCEPTANCE CORP.,

    Defendant.

Case No. 25-10985
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CREDIT ACCEPTANCE'S MOTION TO DISMISS AND/OR STRIKE [13]**

Kimberly Carr received an unwanted phone call from Credit Acceptance asking her "to make a payment or access account information." (ECF No. 12, PageID.77–81.) But Carr is not a customer of Credit Acceptance (*id.* at PageID.80), nor did she give them permission to call her (*id.*). So Carr brought suit under the Telephone Consumer Protection Act (TCPA). (ECF No. 12.) Credit Acceptance now moves to dismiss Carr's amended complaint for failure to state a claim and/or to strike Carr's class allegations. (ECF No. 13.) For the reasons that follow, Credit Acceptance's motion will be GRANTED IN PART and DENIED IN PART.

**I.**

In considering arguments under Federal Rule of Civil Procedure 12(b)(6), the Court "construes the [amended] complaint in the light most favorable" to Carr and determines whether her "[amended] complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v.*

*Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff does not need to provide detailed factual allegations to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but allegations must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Determining what is plausible is "a context-specific task" that requires the Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## A.

These pleading requirements apply to the TCPA. More specifically, the statute states, in relevant part, that "it shall be unlawful for any person . . . to make a call . . . using . . . an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b). An individual has a private right of action to enforce this prohibition. *Id.* at § 227(b)(3).

Courts require that plaintiffs provide sufficient details to support a TCPA claim for artificial or prerecorded calls. In *Reo v. Caribbean Cruise Line*, for instance, a court found that a plaintiffs' complaint provided insufficient detail because "[t]here is no description of the content of the calls . . . and no information regarding the frequency of the calls or why they believed that an . . . 'artificial or prerecorded voice' was used." No. 14-1374, 2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016); *see also Katz v. CrossCountry Mortg., LLC*, No. 22-925, 2022 WL 16950481, at *3 (N.D. Ohio Nov. 15, 2022) ("Plaintiff is also required to make 'some additional factual allegations, no matter how minor, in addition to parroting the language of the statute,' to

2

sufficiently allege that Defendant utilized a prerecorded or artificial voice. . . .") (citation omitted).

Yet while some factual details are required, courts have made clear that it is a low bar to properly plead this claim. *See Duchene v. Onstar, LLC*, No. 15-13337, 2016 WL 3997031, at *5 (E.D. Mich. July 26, 2016) (finding sufficient detail where a plaintiff alleged that he "answered the call, no person spoke to him, and he heard nothing[.]"); *Lopez v. Quicken Loans, Inc.*, 461 F. Supp. 3d 638 (E.D. Mich. 2020) (finding that a plaintiff provided sufficient detail by alleging, among other things, that the calls were generic and nonpersonal).

### B.

Carr's amended complaint provides sufficient detail such that she plausibly alleges that Credit Acceptance used a prerecorded or artificial voice in its message to her.[1]

To start, Carr provides the content of the message she alleges Credit Acceptance left after calling her phone number on March 4, 2025:

> Please call Credit Acceptance at 1-800-634-1506 or you can visit us online at www.creditacceptance.com to make a payment or access account information. Our hours of operation are Monday to Friday from 8:00 a.m. to 11 p.m. Saturday and Sunday 8 a.m. to 5 p.m. Eastern Time. Thank you.

(ECF No. 12, PageID.77.) Carr further alleges that "[g]iven the generic nature of the message, the robotic sound of the voice utilized to leave the message, and the content

---

[1] Carr also adequately pleads that it was Credit Acceptance that placed the call. (*See* ECF No. 12, PageID.78–79.)

3

of the message," this message delivered to her telephone number "was artificial or prerecorded in nature." (*Id.* at PageID.77–78.) She reiterated that the message was delivered in a "monotone voice" and "was impersonal and did not identify Plaintiff or any specific recipient." (*Id.* at PageID.78.) "By listening to the message," Plaintiff alleges, "[she] readily identified the message as recorded and not live speech." (*Id.*)

That is, Carr does not merely "parrot the statutory text or applicable case law." (ECF No. 13, PageID.105.) She instead provides the date of the recording, the content of the recording, and the reasons why she believes the call was prerecorded or artificial. Carr also references other consumers who report receiving the same recording. (ECF No. 15, PageID.143.)

When viewed in the light most favorable to Carr, these allegations establish a plausible claim under the TCPA. *Compare Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 619 F. Supp. 3d 788, 797 (E.D. Mich. 2022) (finding a plaintiff stated a claim where she provided the content and timing of a call) *and Duchene*, 2016 WL 3997031, at *5, *with Aikens v. Synchrony Fin. d/b/a Synchrony Bank*, No. 15-10058, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015), *report and recommendation adopted sub nom. Aikens v. Fin.*, No. 15-10058, 2015 WL 5818860 (E.D. Mich. Aug. 31, 2015) (finding a plaintiff failed to state a claim where she provided "no factual allegations regarding the nature and character of the call") *and Reo*, 2016 WL 1109042, at *4 (finding the same where plaintiffs provided "no description of the content of the calls . . . and no information regarding the frequency of the calls or why they believed that an . . . 'artificial or prerecorded voice' was used").

4

Credit Acceptance's arguments to the contrary fail to persuade. First, Credit Acceptance points to Carr's allegations that Credit Acceptance's calls "were intended for a person named Cornelius." (ECF No. 12, PageID.79.) This, says Credit Acceptance, is equally suggestive that Carr spoke with someone during a live call, such that she did not plausibly plead a call that was artificial or prerecorded. (ECF No. 13, PageID.110.) But a fair reading of the amended complaint as a whole supports the conclusion that there was more than one call from Credit Acceptance. (*See* ECF No. 12, PageID.77 ("Defendant placed at least one call," "with the calls placed," "[f]or example").) Indeed, Carr's allegation about Cornelius references "Defendant's calls" and "artificial or prerecorded voice messages." (ECF No. 12, PageID.79.) Thus, Carr's allegations about "Cornelius" (*id.* at PageID.80–81), or that she "spoke with" a Credit Acceptance representative during an obvious live call (*id.* at PageID.80), does not necessarily mean that those were on the March 4, 2025, call that forms the basis of Carr's TCPA claim. A fair reading of the amended complaint instead supports the inference that Carr called Credit Acceptance *after* the March 4, 2025, call to ask Credit Acceptance to stop calling her. (*See* ECF No. 12, PageID.80 (explaining that Carr spoke with a Credit Acceptance representative after alleging details about the March 4, 2025, call but that the calls "continued").) That is, Credit Acceptance's arguments about a live call (ECF No. 13, PageID.110–111) does not change the Court's analysis because it views Carr's allegations "in context of the whole [amended] complaint." *R.S. Scott Assocs., Inc. v. Timm Const. Co. LLC*, No. 14-13338, 2014 WL 7184448, at *5 (E.D. Mich. Dec. 16, 2014).

5

Credit Acceptance also takes issue with Carr's allegations that the call was "prerecorded or artificial." (ECF No. 12, PageID.78.) Credit Acceptance contends that she needed to distinguish between these different types of technology. (*See, e.g.*, ECF No. 13, PageID.106 ("Plaintiff still fails to specify which type of 'voice' technology she contends was actually used here, even though the terms 'artificial' and 'prerecorded' are not synonymous under the TCPA . . . This omission is critical and demonstrates how Plaintiff is merely throwing darts at a proverbial dartboard here, not pleading actual facts.").) Projectiles aside, Credit Acceptance does not point to any authority to show that a plaintiff's failure to identify whether the message was either prerecorded or artificial means the whole claim must fail—and fail at the pleadings stage. To the extent these terms are contradictory (the Court does not so conclude), a plaintiff is entitled to plead in the alternative. *See* Fed. R. Civ. P. 8(d)(3).

Credit Acceptance's cases do not move the needle. Take, for instance, the primary case it says "warrants dismissal," *Rogers v. Assurance IQ, LLC*, No. 21-00823, 2023 WL 2646468 (W.D. Wash. Mar. 27, 2023). (ECF No. 13, PageID.108.) *Rogers* reasoned that sufficient allegations in the TCPA context include, among other things, references to a call's "robotic sound," "generic content of the message," and "anything else about the circumstances of a call or message contributing to [her] belief it was pre-recorded." *Id.* (internal citation omitted). But Carr alleged those very facts. So too in *Metzler v. Pure Energy USA LLC*, (ECF No. 13, PageID.107), where the court faulted the plaintiff for not alleging, among other things, "that the voice in the message sounded artificial." No. 21-9798, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6,

6

2023). Carr does that—and more. Carr properly alleges that Credit Acceptance left her a prerecorded or artificial call in violation of the TCPA.

Thus, dismissal for failure to state a claim is not warranted.[2]

## II.

Credit Acceptance next argues that Carr fails to state a "willful[l]" or "knowin[g]" violation of the TCPA that would entitle her to treble damages. (ECF No. 13, PageID.112–113.) The Court agrees.

### A.

A violation of the TCPA allows a plaintiff to recover the greater of actual monetary losses, 47 U.S.C. § 227(b)(1)(A), or $500 per violation, *id.* at § 227(b)(3)(B). If a defendant "willfully or knowingly violated" the TCPA, however, the Court may, "in its discretion," award treble damages. *Id.* at § 227(b)(3).

"[A] willful or knowing violation of TCPA requires that Plaintiff has to plead that Defendant was made aware of/notified that Plaintiff did not consent to calls from Defendant." *Duchene*, 2016 WL 3997031, at * 7; *see also Bristow v. Am. Nat'l Ins. Co.*, No. 20-10752, 2021 WL 2201171, at *2 (E.D. Mich. June 1, 2021) ("*[S]omething more* than a mere violation is required in order to elevate it to a willful or knowing one, lest *every* violation be subject to the treble damage provision of the Act. This District has repeatedly determined that the 'something more' is *actual* knowledge, not mere

---

[2] Credit Acceptance contends that Carr has abandoned any theory of vicarious TCPA liability. (ECF No. 13, PageID.113–114.) This appears correct. (*See generally* ECF No. 15.) Thus, the Court need not analyze the issue.

7

constructive knowledge, and not a mere violation of the statute.") (emphasis in original).

**B.**

Carr's claim for a willful or knowing violation fails for two reasons. First, Carr does not plausibly allege that Credit Acceptance had "actual knowledge" before the March 4, 2025, call. That is, viewing Carr's "individual allegations in context of the whole [amended] complaint," Carr alleges that it was only *after* the March 4, 2025, call, or at least after the allegedly unlawful part of that call (*see* ECF No. 15, PageID.143), that she informed Credit Acceptance it was "calling the wrong number," after which the calls "continued." (ECF No. 12, PageID.80); *R.S. Scott Assocs., Inc.*, 2014 WL 7184448, at *5. The result is that Credit Acceptance necessarily did not have prior notice from Carr before the March 4, 2025, call.

Moreover, the calls Carr says she received after putting Credit Acceptance on notice also cannot support a "willful[l]" or "knowin[g]" violation because Carr does not provide any allegations to support those calls—i.e., they could not even stand on their own as plausible claims. Carr's reliance on *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888 (E.D. Mich. 2012) proves the point. (ECF No. 15, PageID.129–130.) *Harris*, decided on summary judgment, included actual evidence about additional calls from the defendant after it was put on notice that the plaintiff did not consent to the calls. *See id.* at 896. ("Defendants, however, continued to call Plaintiff *regarding Morgan's past due balances on her other two accounts*.") (emphasis added). By contrast, Carr provides no information—no allegations concerning the date(s),

8

nature, or content—of any alleged calls after putting Credit Acceptance on notice. That is insufficient for the Court to, "in its discretion," find that Credit Acceptance "willfully" or "knowingly" violated the TCPA. 47 U.S.C. § 227(b)(3).

Thus, dismissal of Carr's claim for a "willful[l]" or "knowin[g]" violation of the TCPA is warranted.[3]

### III.

That leaves Carr's class allegations, which Credit Acceptance contends should be stricken under Rules 12(f) and 23. The Court disagrees.

### A.

Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In turn, Rule 23 requires a court to determine "whether to certify the action as a class action" at "an early practicable time" in the case. Fed. R. Civ. P. 23(c)(1)(A). And the Sixth Circuit allows pre-discovery motions to strike class allegations. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011).

But it is a high bar. Pre-discovery motions to strike class allegations are granted only where it is impossible to certify the defined class no matter how much discovery occurs. *See Stevenson v. Sam's W., Inc.*, No. 24-294, 2025 WL 1558259, at

---

[3] To the extent Carr maintains that a "willful[l]" or "knowin[g]" violation exists because she provided a link to a website referencing other consumers who say Credit Acceptance left a similar message, that will not do because those calls were not made to Carr. So knowledge from Credit Acceptance *as to Carr* is still absent.

9

*4 (S.D. Ohio June 2, 2025); *Hubble v. loanDepot.com, LLC*, 24-11173, 2025 WL 2710569, at *2 (E.D. Mich. Sept. 23, 2025).

## B.

Credit Acceptance seeks to strike the class allegations based on Rule 23(b)(3)'s predominance requirement (ECF No. 13, PageID.116–121), and the allegedly impermissible "fail-safe" nature of the defined class (*id.* at PageID.121–122). Neither will do.

### 1.

Start with Rule 23(b)(3), which asks, in relevant part, whether "questions of law or fact common to class members predominate over any questions affecting individual members." Fed. R. Civ. P. 23(b)(3).

Credit Acceptance argues that individualized questions of consent—an affirmative defense, *Smith v. Equrra, LLC*, No. 25-10975, 2025 WL 2941903, at *3 (E.D. Mich. Oct. 16, 2025*)*—predominate over common questions of would-be class members. (ECF No. 13, PageID.117.) Those individualized inquires, Credit Acceptance maintains, mean the Court should strike Carr's class allegations at this stage of the litigation.

But under Sixth Circuit precedent, that argument is unlikely to work even *at* the class certification stage—let alone at the pleadings stage, when Carr has not yet undertaken discovery to propose a class definition suitable under Rule 23. *See Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) ("We hold that the mere mention of a defense is not enough to defeat the

predominance requirement of Rule 23(b)(3).") In *Bridging*, the Sixth Circuit reversed a district court's decision denying a TCPA plaintiff's motion to certify a class, finding that "speculation alone regarding individualized consent [is] insufficient to defeat plaintiffs' showing of predominance under Rule 23(b)(3)."[4] *Id.* So too in this case—and even more so given that Carr has not even moved to certify a class. Finally, and for good measure, to the extent consent appears to defeat Rule 23's predominance requirement at some point in the litigation, courts have other tools (such as subclasses and exclusion) at their disposal. *See id.*

### 2.

Next is the argument about a "fail-safe" class—i.e., "a class that cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). A fail-safe class "shields the putative class members from receiving an adverse judgment" because "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).

Credit Acceptance argues that the Court should strike Carr's class definition as a "fail-safe" class because "[g]iven how Plaintiff's proposed class is pled, [it] would only include members with valid claims and who did not consent." (ECF No. 13, PageID.122.) And "[i]n alleged class actions under the TCPA, courts have generally

---

[4] To be sure, the Sixth Circuit has found that "concrete evidence of consent" may defeat certification, but "mere 'speculation and surmise'" will not. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 469 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017). Again, though, these arguments turn on certification—not a motion to strike from a pleading.

11

found that proposed classes defined based on a lack of consent were impermissible 'fail-safe classes.'" *Carmouche v. A1 Diabetes & Med. Supply, Inc.*, 586 F. Supp. 3d 795, 805 (W.D. Tenn. 2022).

But there is no "fail-safe" class here. Carr proposes a class as follows:

All persons and entities persons throughout the United States (1) to whom Credit Acceptance Corporation placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a Credit Acceptance Corporation accountholder, (3) with an artificial or prerecorded voice, (4) from April 8, 2021 through the date of class certification.

(ECF No. 12, PageID.81.)

Carr's proposed class "does not reference consent or lack thereof in its definition." *Carmouche*, 586 F. Supp. 3d at 806. It instead encompasses only individuals who received an allegedly unlawful call but were not Credit Acceptance customers. (ECF No. 12, PageID.81.) That is, Carr's "proposed class instead consists of persons or entities that [Credit Acceptance] called that were not [Credit Acceptance] customers." *Carmouche*, 586 F. Supp. at 806. The result: the "proposed members of the class will have received a telemarketing call—and thus have a claim—but might not be entitled to relief due to the affirmative defense of an established business relationship or their consent to the calls." *Jewell v. Magnolia Bank, Inc.*, No. 23-78, 2024 WL 203972, at *5 (W.D. Ky. Jan. 18, 2024).

As Carr notes, courts have granted class certification using similar definitions as the ones Carr proposes—including, importantly, definitions with the "assigned" language Credit Acceptance takes issue with. (ECF No. 15, PageID.152–153.) The Court thus agrees with Carr that "in light of the numerous cases that have certified

12

relatively similar classes, it is not impossible to certify a TCPA class here." *Jaffery v. Health Ins. Plan of Greater New York*, No. 23-522, 2024 WL 4223740, at *4 (N.D.N.Y. Sept. 18, 2024); *cf.* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1383 (3d ed. 2018) ("[C]lass allegations [are] stricken prior to a motion for certification only when class certification is a clear impossibility."). Thus, it is premature to dismiss Carr's class allegations.

## IV.

For the foregoing reasons, Credit Acceptance's motion to dismiss and/or strike (ECF No. 13) is GRANTED IN PART and DENIED IN PART.[5]

IT IS SO ORDERED.

Dated: February 4, 2026

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
United States District Judge

---

[5] Carr withdrew her request for injunctive relief (ECF No. 15, PageID.131), so Credit Acceptance's motion to dismiss on that ground is DENIED AS MOOT.